### Sheri Davis Peabody v. P.J.'s Auto Village, Inc.

[569 A.2d 460]

No. 87-526

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed October 27, 1989

*Biggam & Fox,* Montpelier, for Plaintiff-Appellant.

*Allan Bruce, Burlington,* for Defendant-Appellee.

**Morse, J.** Plaintiff appeals a judgment, following a bench trial, in favor of defendant, P.J.'s Auto Village, Inc. She lost her

suit for damages under Vermont's Consumer Fraud Act, 9 V.S.A. § 2453(a), resulting from P.J.'s sale to her of the front of a 1974 Saab welded to the back of a 1972 Saab, known in the trade as a "clipped" vehicle. The only issue is whether the trial court erred when it required plaintiff to prove actual damage. We reverse and remand.

I.

On February 20, 1979, P.J.'s sold plaintiff a used Saab for $2,895.00. Before P.J.'s received the Saab as a trade-in, someone created it by welding the front of a 1974 Saab to the back of a 1972 Saab. Although P.J.'s knew the vehicle was clipped, it did not disclose this to plaintiff; it represented the car as a 1974 model. P.J.'s disputes this fact on appeal. The trial court found, however: "The welding can readily be seen during routine maintenance when the car is on a lift. The dealer performed routine maintenance on the vehicle prior to the sale and was *aware of its condition.*" (Emphasis added.) This finding is not clearly erroneous. The person who traded in the clipped automobile to P.J.'s approximately one month before it was sold to plaintiff testified that P.J.'s lost the title to the car and that when he went to P.J.'s to fill out the paperwork for a new title it was "indicated . . . that they had found two vehicle identification numbers on the car and they were different from one another and that the car had obviously been repaired."

The court also found that P.J.'s sales policy—although not followed in this case—requires disclosure to "purchasers of the condition of the vehicle to be sold, including the fact that it has been clipped," and that such information is of the type that a used car purchaser would "reasonably expect from a dealer in a fair competitive market." Further, the court found that "[h]ad the buyer known of the [clipped] condition of the car at time of purchase, she would have purchased one without this repair work" and that "a reasonable consumer" would have "considerable reluctance to purchase a [clipped] vehicle." The court summed up by concluding that plaintiff had no actual problems with the car and "that the repair work resulted in a safe, reliable car at least equal to one not [clipped]." Plaintiff drove the

car nearly one and one-half years before discovering through a routine maintenance check that the Saab was clipped.

## II.

Vermont's Consumer Fraud Act makes it unlawful to employ "unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a). It was enacted "to protect the public, and to encourage fair and honest competition." 9 V.S.A. § 2451. Despite what plaintiff proved to the trial court's satisfaction, it concluded that P.J.'s failure to disclose that the automobile was clipped did not constitute a "deceptive act" within the meaning of § 2453.

The elements of "a deceptive act or practice" are set forth in *Poulin v. Ford Motor Co.*, 147 Vt. 120, 124–25, 513 A.2d 1168, 1171–72 (1986):

> (1) there must be a representation, practice, or omission likely to mislead [the] consumer[ ];
>
> (2) the consumer[ ] must be interpreting the message reasonably under the circumstances; and
>
> (3) the misleading effects must be "material," that is, likely to affect [the] consumer[']s conduct or decision with regard to a product.

(quoting *International Harvester Co.*, 104 F.T.C. 949, 1056 (1984)). Deception is measured by an objective standard focusing "on risk of consumer harm" in a particular case. *International Havester Co.*, 104 F.T.C. at 1056. "[A]ctual injury need not be shown," *id.*, because "representations made [with the] capacity or tendency to deceive" satisfy the standard. *Federal Trade Commission v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963); *Charles of the Ritz Distributors Corp. v. Federal Trade Commission*, 143 F.2d 676, 680 (2d Cir. 1944). Although these cases were decided under the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), interpretations of its Vermont counterpart, § 2453(a), are "guided by the construction of similar terms contained in . . . the Federal Trade Commission Act." 9 V.S.A. § 2453(b). We adopt the tests for deception in *International Harvester* and *Sterling Drug* as those to be applied under Vermont's Consumer Fraud Act.

The trial court denied relief because the "clipped" condition of the Saab did not cause "difficulties"; the car did not break down nor did its fair market value diminish at any point. After considering these elements, the trial court concluded that P.J.'s failure to accurately represent the vehicle was not material because the car did not present any "undesirable consequence as far as its reliability, safety or fair market value." The court's conclusion that plaintiff did not prove "materiality" obviously cannot be reconciled with the findings. P.J.'s purported to sell plaintiff a 1974 Saab. It is a material misrepresentation to call the vehicle a 1974 Saab because the rear wheels, trunk, and parts of its undercarriage and passenger compartment came from a 1972 Saab. See 16 C.F.R. § 455.1(a)(1) ("[i]t is a deceptive act or practice for any used vehicle dealer, . . . [t]o misrepresent the mechanical condition of a used vehicle"); cf. *Bernard v. Central Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 229–31, 314 S.E.2d 582, 583–84 (1984) (seller's misrepresentation that the year and make of the tractor engine was a 1975/400 Cummins engine when, in fact, it was a 1972/370 Cummins engine violated North Carolina's Consumer Fraud Act which, like Vermont's, tracks the federal act's language).

The court also found that plaintiff did not reasonably interpret the seller's failure to describe the clipped nature of the car because her concern was the year rather than the condition of the car. The issue here, however, is only whether plaintiff reasonably believed that she was buying an unclipped 1974 Saab. These findings belie the court's conclusion denying plaintiff relief.

■■ It is apparent that the trial court considered actual damage as an element of consumer fraud. All plaintiff must show, however, is that the deceptive omission is "likely to influence a consumer's conduct" by "distort[ing]" the buyer's "ultimate exercise of choice." *International Harvester Co.*, 104 F.T.C. at 1057. The court found that "a consumer cannot be expected to have th[e] confidence" that this clipped car is as good as a whole 1974 Saab, and that "the lack of information may have materially affected the consumer's decision because of the chary nature of used car purchases." Even though the

court drew the wrong conclusions of law from its findings of fact, this does not render the findings themselves clearly erroneous. In sum, a fair reading of the court's findings demonstrate all of the elements of a deceptive omission; consequently, plaintiff is entitled to relief.

We reverse for a determination of damages and reasonable attorney fees.

*Reversed and remanded.*