2004 VT 67

### Gary Greene v. Stevens Gas Service and CI Co-operative Fire Insurance

[858 A.2d 238]

No. 03-221

Present: Amestoy, C.J., Dooley, Johnson, Skoglund and Reiber, JJ.

Opinion Filed July 30, 2004

*Thomas C. Nuovo* of *Bauer, Anderson & Gravel*, Burlington, for Plaintiff-Appellant.

*Richard P. Foote* of *Conley & Foote*, Middlebury, for Defendant-Appellee.

*William H. Sorrell*, Attorney General, and *David B. Borsykowsky*, Assistant Attorney General, Montpelier, for Amicus Curiae State of Vermont.

¶ 1. **Dooley, J.** Plaintiff, Gary Greene, appeals a grant of summary judgment dismissing claims against his insurer, Co-operative Insurance Company (Co-op), for breach of contract, breach of implied covenant of good faith and fair dealing, and also for consumer fraud under Vermont's Consumer Fraud Act, 9 V.S.A. §§ 2451-2480g. The Vermont Attorney General filed a brief amicus curiae in support of plaintiff, arguing that the 1985 amendments to the Consumer Fraud Act have broadened the act's scope such that it now applies to insurance, and *Wilder v. Aetna Life & Casualty Insurance Co.*, 140 Vt. 16, 433 A.2d 309 (1981), is no longer controlling law. Without reaching whether the consumer fraud law now extends to insurance, we affirm.

¶ 2. The facts before us are in the summary judgment record and plaintiff's complaint. In September 1995, plaintiff obtained homeowner's insurance from defendant through its local agent, Williston Insurance Agency. The policy covered a log home plaintiff intended to build at his site in Underhill, Vermont. Construction began that fall, but was not complete by winter. In order to ensure that construction could continue through the winter, plaintiff hired Stevens Gas Service[1] to provide propane space heaters at the building site.

¶ 3. According to plaintiff's complaint, on December 7 or 8, 1995, an employee of Stevens Gas Service left the heaters on at full power for

---

[1] Stevens Gas Service is a defendant in the trial court, but the summary judgment decisions on appeal did not affect plaintiff's claim against Stevens. As a result, Stevens did not appear in this appeal.

over 12 hours, causing the interior of the house to reach a temperature of approximately 192° F. As a result, the logs split, cracked, and twisted causing the walls to become uneven, twisted and bowed. Also, the superheating caused an ice build-up on the exterior of the house that ruined windows and other components of the building. Shortly thereafter, plaintiff filed a claim on the homeowner's policy. On December 23, defendant sent two builders, both of whom had some experience with solid wood wall buildings, to investigate the damage. The investigators reported that the excessive heat had accelerated the natural process of the wood beams "checking," that is, cracking that normally occurs through drying of the wood over time. In a letter dated January 8, 1996, a claims representative for defendant notified plaintiff that defendant had denied the claim because it "fails to see any monetary loss as the cracks to the center of the logs are a natural process occurring over several years ... [and the] excessive heat within the home sped up the natural drying and shrinking process of the logs." It concluded that the inspection found "no signs or evidence indicating any structural damage to your log home due to the accelerated process which occurred."

¶ 4. Over the next six months, plaintiff obtained at least two repair estimates. However, he never provided these estimates to defendant or notified the company that he disputed its decision not to pay the claim.[2] The next exchange between the parties did not occur until nearly a year after the heating incident, on December 5, 1996, when plaintiff's roommate called defendant's claims representative to request information from the company's file. The representative mailed a letter to plaintiff the following day providing the requested information. It reiterated that Co-op had found no monetary loss, but also stated that plaintiff's claim would not be covered in any case because the policy's Errors, Omissions, and Defects exclusion applied.[3]

---

[2] Plaintiff claimed in his brief and at argument that he provided the estimates to defendant, but we can find no demonstration of the fact anywhere in the record. In fact, defendant itemized all its contacts with plaintiff in the claims representative's affidavit and included in its statement of undisputed material facts that "[n]o other communication occurred between Co-op and Mr. Greene or anyone representing Mr. Greene" until the suit. Plaintiff admitted this statement and is bound by this admission. See V.R.C.P. 56(c)(2).

[3] The Errors, Omissions, and Defects exclusion provides:

12. Errors, Omissions and Defects — We do not pay for the following:

a. an act, error, or omission (negligent or not) relating to:

1) land use;

¶ 5. In January 1997, plaintiff obtained two more repair estimates. Two months later, on March 25, 1997, plaintiff's attorney left a message with the claims representative, who returned the call the next day. The attorney requested information concerning a possible suit by plaintiff against Stevens Gas Service. According to the facts available in the record, there was no further contact between plaintiff or his attorney and defendant until December 3, 2001, when the present suit was filed.

¶ 6. Plaintiff's complaint alleged three counts: (1) violation by defendant of the Consumer Fraud Act; (2) negligence by Stevens Gas Service; and (3) breach of contract and breach of implied covenants of good faith and fair dealing by defendant and Stevens Gas Service. Because Stevens Gas Service is not a party to this appeal, we do not consider the second issue here.

¶ 7. In February 2002, defendant filed a motion to dismiss counts one and three — that is, all counts against it — because (1) all the claims against it were barred by the suit time limitation provision in the insurance contract; and (2) the Consumer Fraud Act violation claim could not be sustained because the act does not apply to insurance transactions. In response to plaintiff's answer that the motion to dismiss was based on facts beyond the complaint, defendant converted it to a motion for summary judgment on the same grounds, attaching an affidavit of the claims representative and a statement of undisputed material facts consistent with our recitation of the facts above. Plaintiff filed his affidavit, a statement of disputed facts and a memorandum arguing that the limitation period in the insurance contract could not be enforced because defendant failed to give notice of it pursuant to a state insurance regulation, that defendant's denial of coverage was wrong and that the complaint stated a valid consumer fraud claim.

---

2) the design, specification, construction, workmanship or installation of property;

3) planning, zoning, development, surveying, siting, grading, compaction; or

4) maintenance of property (including land, structures or improvements);

whether on or off the insured premises;

b. a defect, a weakness, the inadequacy, a fault or unsoundness in materials used in construction or repair whether on or off the insured premises.

We do not pay for an ensuing loss unless the ensuing loss itself is excluded.

¶ 8. Initially, the court granted summary judgment with respect to the consumer fraud claim, on the basis that the act did not cover insurance transactions, but denied defendant's motion with respect to plaintiff's claim that defendant breached the insurance contract and violated the covenants of good faith and fair dealing because there was a question of fact relating to whether defendant should have notified plaintiff of the imminent expiration of the notice period. The court refused to reconsider its dismissal of the consumer fraud claim, adding as an additional ground that the undisputed facts do not show consumer fraud as alleged in plaintiff's complaint. It did reconsider its denial of the summary judgment motion with respect to plaintiff's claim in the complaint that defendant breached the insurance contract and violated the covenants of good faith and fair dealing, dismissing that count because the contract time limitation applied and had expired before the complaint was filed and defendant had no obligation to inform plaintiff of the imminent expiration of the limitation period. Because no claims remained against defendant, the superior court awarded it final judgment under V.R.C.P. 54(b) to allow this appeal to go forward. Plaintiff now appeals the trial court's dismissal of his claims against defendant.

¶ 9. We review a grant of summary judgment using the same standard of review applied by the trial court. *Al Baraka Bancorp (Chicago), Inc. v. Hilweh*, 163 Vt. 148, 153, 656 A.2d 197, 200-01 (1994). "Summary judgment is appropriate only where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law." *Samplid Enters., Inc. v. First Vt. Bank*, 165 Vt. 22, 25, 676 A.2d 774, 776 (1996); V.R.C.P. 56(c)(3). Although the nonmoving party is entitled to the benefit of all reasonable doubts and inferences, *City of Burlington v. Nat'l Union Fire Ins. Co.*, 163 Vt. 124, 127, 655 A.2d 719, 721 (1994), according to V.R.C.P. 56(e):

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

■ ¶ 10. We begin with the appeal of plaintiff's consumer fraud complaint. As stated above, the superior court dismissed this claim because it held both that the Consumer Fraud Act did not apply to insurance transactions and that plaintiff failed to demonstrate a consumer fraud case even if the act applied. The court's first ground is based on our decision in *Wilder*, 140 Vt. 16, 433 A.2d 309. Plaintiff and amicus curiae, the Vermont Attorney General, argue that *Wilder* is no longer good law after the 1985 amendments to the Consumer Fraud Act. We do not reach this argument. We conclude, instead, that the court's second ground was correct. Thus, we do not decide whether the Consumer Fraud Act applied, but hold that even if the act applied, the superior court properly granted summary judgment for defendant on the consumer fraud count.

¶ 11. We note that the court's analysis of this issue was made diffi- cult by plaintiff's shifting positions. Plaintiff's complaint stated that plaintiff "is a consumer who contracted for goods and services in reliance upon false or fraudulent representations or practices prohib- ited by the Consumer Fraud Act and sustained damages as a result of that fraud." Exactly what the "false and fraudulent" representations were is not specified. In response to defendant's motion for summary judgment, plaintiff indicated that one of the material facts in dispute was that plaintiff believed that his insurance policy would cover damages caused by contractors. His affidavit stated he was not informed that the policy contained an exclusion for loss that results from construction of property and had he known so he would "have requested a different policy." His memorandum argued that defendant should have known plaintiff needed coverage during the construction process and if an exclusion applied, should have "offered additional coverage or explained what would be excluded."

¶ 12. After the court granted summary judgment on the Consumer Fraud Act count, plaintiff shifted his argument. He argued that the Consumer Fraud Act violation occurred after he incurred the loss:

> In the present case Cooperative engaged in actions which were intended to deceive the plaintiff as to his right to pursue a claim under his contract for benefits. This is evident since originally Cooperative denied the claim stating there was no damage to the property as a result of the action of Steven's Gas. However, after the plaintiff provided Cooperative with estimates dealing with the extent of the damages, it was then

> that Cooperative claimed plaintiff did not have coverage for the damages he suffered. This creates a question of fact for the jury as to whether or not Cooperative deceived Mr. Greene into believing he could not pursue a claim under his insurance policy.
>
> Under the Act, a "deceptive act or practice" is any material representation, practice or omission likely to mislead a reasonable consumer. . . . Mr. Greene was deceived because he believed that his only recourse was to pursue a claim against Stevens Gas because he had been told his insurance did not cover the damages claimed.

The court apparently addressed this argument in finding that plaintiff had not demonstrated an arguable violation of the Consumer Fraud Act. Plaintiff made this same argument in his brief to this Court, never mentioning any claim that defendant committed consumer fraud in issuing the policy to him with the exclusion. In response to defendant's brief, however, he reiterated the factual assertions made in his affidavit and complaint.

¶ 13. Assuming they were properly raised, neither theory was sufficiently supported to withstand summary judgment. The essential problem with plaintiff's position is that defendant denied liability primarily because it concluded, based on the investigation it performed, that plaintiff had suffered no compensable loss. Although plaintiff asserts that he obtained independent estimates showing loss, he never provided them to defendant or contested in any way defendant's assessment regarding coverage until this litigation. Thus, even if defendant had provided plaintiff a policy with no exclusions related to how the loss was incurred, it would have made no difference to defendant's coverage decision because defendant understood there to be no loss. In a damage action under the Consumer Fraud Act, the consumer must demonstrate that he sustained "damages or injury as a result of any false or fraudulent representations or practices" of the "seller, solicitor or other violator." 9 V.S.A. § 2461(b); see *Carter v. Gugliuzzi*, 168 Vt. 48, 52, 716 A.2d 17, 21 (1998). Although we read broadly the requirement that there be injury, see *Peabody v. P.J.'s Auto Village, Inc.*, 153 Vt. 55, 58, 569 A.2d 460, 462-63 (1989), there must be some cognizable injury caused by the alleged consumer fraud.

¶ 14. Plaintiff's theory of a Consumer Fraud Act violation connected with the denial of coverage is also based on the inaccurate statement that defendant raised the coverage exclusion only to avoid paying

plaintiff's claim once he demonstrated a compensable loss. However, plaintiff never demonstrated a compensable loss to defendant.

¶ 15. There is, however, a broader reason why his claim based on defendant's refusal to pay cannot get beyond a summary judgment motion even if the Consumer Fraud Act applies to insurance transactions. The Consumer Fraud Act makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a). The requirements of a claim under the Consumer Fraud Act are set out in *Peabody*: "(1) there must be a representation, practice, or omission likely to mislead the consumer; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is, likely to affect the consumer's conduct or decision with regard to a product." 153 Vt. at 57, 569 A.2d at 462 (citing *Poulin v. Ford Motor Co.*, 147 Vt. 120, 124-25, 513 A.2d 1168, 1171-72 (1986)). We fail to see how plaintiff meets the first requirement of the test. His argument is that by denying coverage defendant deceived plaintiff into believing his only recourse was against Stevens Gas Service. Under that logic, any denial of coverage becomes consumer fraud. As we held in *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 136, 636 A.2d 744, 749 (1993), a mere breach of contract cannot be sufficient to show consumer fraud.

¶ 16. We are left here with a coverage dispute. There is no evidence to support plaintiff's position that defendant acted in bad faith in hiring the persons who evaluated plaintiff's alleged damages, in relying upon their report, and in claiming that a policy exclusion applied to the circumstances that created plaintiff's alleged damages. In those states that recognize Consumer Fraud Act applicability to insurance transactions, a mere coverage dispute is insufficient to show consumer fraud. See *Barr Co. v. Safeco Ins. Co. of America*, 583 F. Supp. 248, 257-58 (N.D. Ill. 1984) (Consumer Fraud Act count that alleged defendant had a practice of not paying valid claims promptly and completely could go forward because it was not "merely a contract action at heart"); *Showpiece Homes Corp. v. Assurance Co. of America*, 38 P.3d 47, 59 (Colo. 2002) (holding that bad faith handling of an insured's claim fell within the act); *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 683 (N.C. 2000) (holding that "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear," constitutes unfair conduct and is thus a violation of consumer protection law) (internal quotation marks

omitted); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 926 (Tenn. 1998) (although Tennessee Consumer Protection Act applies to insurance transactions, mere good faith denial of a claim is not actionable under the act); *Salois v. Mutual of Omaha Ins. Co.*, 581 P.2d 1349, 1351 (Wash. 1978) (holding that an insurer's violation of covenant of good faith and fair dealing was actionable under the consumer protection act).

¶ 17. In summary, we agree with the superior court that, even if the Consumer Fraud Act applies, plaintiff failed to make out a case of consumer fraud sufficient to withstand summary judgment. The court correctly dismissed this count of plaintiff's complaint.

¶ 18. We now turn to the court's decision to grant defendant summary judgment on plaintiff's breach of contract and breach of implied covenants of good faith and fair dealing allegations. Plaintiff alleged that defendant failed to provide him the insurance coverage he specifically contracted for, failed to pay for the damages caused by Stevens Gas as provided in the insurance contract, and breached "the covenant of good faith by not performing services in a professional manner or consistent with the requests or known expectations of the plaintiff." The trial court dismissed these claims finding that they were untimely under the "Suit Against Us" provision in the insurance contract. The relevant portion of this clause of the policy states:

> 9. Suit Against Us — No suit may be brought against us unless all the terms of this policy have been complied with and
> > a. Property Coverages — The suit is brought *within two years after the loss.*
> > If a law of the state where the premises is located makes this time period invalid, the suit must be brought within the time period allowed by the law.

(Emphasis added.) We have held that such a contractual limitation clause is valid if it complies with statutory restrictions. See *Gilman v. Maine Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 9, 175 Vt. 554, 830 A.2d 71 (mem.); *Springfield Coop. Freeze Locker Plant, Inc. v. Wiggins*, 115 Vt. 445, 447, 63 A.2d 182, 184 (1949). The applicable statute prohibits such limitation clauses only if they set a time limit less than a year from the date of the loss:

**Minimum limitation on actions; void policy provisions**

> A policy of fire, life, accident, liability or burglary insurance, or an indemnity, surety or fidelity contract or bond issued or delivered in this state by an insurance company doing business herein *shall not contain a condition or clause limiting the time of commencement of an action on such policy or contract to a period less than twelve months* from the occurrence of the loss, death, accident or default .... Any such conditions or clauses shall be null and void.

8 V.S.A. § 3663 (emphasis added). On its face, the statute would not invalidate the two-year limitation clause before us, at least with respect to actions "on such policy or contract." Thus, the question narrows to whether this clause applied to plaintiff's claims in the complaint, and if it did, whether plaintiff's complaint was untimely under that clause.

¶ 19. Answering this question is a two-step process. First, we must determine from the language of the policy's clause whether it applies to the claim before us. Second, we must determine as a matter of law whether § 3663 bars application of the clause to plaintiff's claims. The latter is a question of public policy, informed by the Legislature's action in adopting § 3663.

¶ 20. The language of the suit limitation clause before us is very broad. With respect to coverage for property damage, the subject of this lawsuit, it purports to cover any suit against the insurance company. Thus, it covers the allegations in plaintiff's complaint.

¶ 21. The public policy question requires more analysis. Because § 3663 is expressed as a restriction on suit limitation clauses, rather than an authorization for them, we take it as an indication of the Legislature's policy direction. The language of § 3663 restricts the applicability of suit limitation clauses to actions "on such policy or contract." This narrowing is consistent with the developing law around the country on the proper use of suit limitation clauses. See *Warmka v. Hartland Cicero Mut. Ins. Co.*, 400 N.W.2d 923, 925 (Wis. 1987) (because the broad policy language and the regulatory statute "relate to actions to recover for property damages due to losses covered by the policy ... [the] limitations govern actions that are 'on the policy'"); 16 Couch on Insurance 3d § 235:100 (2000). The courts have uniformly applied them to suits "on the policy," but frequently refused to apply them to other litigation between an insurer and insured. See, e.g.,

*Emenyonu v. State Farm Fire & Cas. Co.*, 885 P.2d 320, 323 (Colo. Ct. App. 1994) (limitation provision applies only to "contract claims which arise under the policy itself"); *Warmka*, 400 N.W.2d at 925.

■ ¶ 22. An action for breach of the insurance contract is a suit "on the policy" and thus can be subject to a suit limitation clause. *Martin v. Liberty Mut. Fire Ins. Co.*, 293 N.W.2d 168, 171 (Wis. 1980). Thus, to the extent plaintiff has alleged that defendant breached the insurance contract between them, this claim must be brought within the two-year limit contained in the clause.

¶ 23. The more difficult questions arise with respect to plaintiff's claim that defendant violated the covenant of good faith and fair dealing. These allegations are clearly within the scope of the policy's suit limitation clause, but it is less clear whether these allegations constitute a complaint "on the policy." Plaintiff contends that these claims are not "on the policy" because they are tort claims not based on a breach of any of the policy provisions. Defendant, in turn, argues that plaintiff's claim that it violated the covenant of good faith and fair dealing is an action "on the policy" because these covenants arise out of the insurance contract and are defined by the contract's terms.

¶ 24. We note at the outset that we have decided the question of whether allegations of a violation of the covenant of good faith and fair dealing is an action "on the policy," at least implicitly, in *Gilman*, 2003 VT 55, at ¶ 9. In that case, we affirmed a summary judgment decision dismissing, as barred by a policy limitation clause, claims including breach of the covenant of good faith and fair dealing. We did not, however, explicitly address whether this action was "on the policy," apparently because plaintiff in that case failed to argue that it was not. We conclude that *Gilman* was correctly decided and use this opportunity to further explain its reasoning.

¶ 25. Plaintiff is correct that we have labeled a claim that a defendant violated a covenant of good faith and fair dealing as one sounding in tort. In *Carmichael v. Adirondack Bottled Gas Corp. of Vermont*, 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993), we stated that "an action [for breaching covenant of good faith] is really no different from a tort action, because the duty of good faith is imposed by law and is not a contractual term that the parties are free to bargain in or out as they see fit." In *Bushey v. Allstate Insurance Co.*, 164 Vt. 399, 402, 670 A.2d 807, 809 (1995), we explicitly recognized "a cause of action for bad-faith failure of an insurer to pay a claim filed by its insured" and labeled this cause of action as a tort. Holding that plaintiff's complaint alleges a form of tort does not, however, necessarily mean that the action is not

"on the policy." As defendant argues, even though the implied covenant is not negotiable, it arises solely because of the presence of the insurance contract, and the insurer's obligation to pay a claim is defined by that contract.

¶ 26. We note that courts in other jurisdictions are split on whether a count that defendant insurer failed to pay an insured's claim in good faith is a count "on the policy" and subject to a contractual limitation clause, even among courts that label the underlying action as one sounding in tort. At one extreme, some courts hold that a bad faith claim is collateral to the policy and *never* subject to a policy limitation clause. See, e.g., *Warmka*, 400 N.W.2d at 925. At the other extreme, courts hold that the nexus between the action and the policy is so strong that a bad faith failure to pay claim is *always* subject to a policy limitation clause. See, e.g., *Modern Carpet Indus., Inc. v. Factory Ins. Ass'n*, 186 S.E.2d 586, 587 (Ga. Ct. App. 1971). We conclude that the better reasoned decisions lie between the two extremes and are persuaded by the Iowa Supreme Court's reasoning in *Stahl v. Preston Mutual Insurance Ass'n*, 517 N.W.2d 201, 203-04 (Iowa 1994). In *Stahl*, the court considered whether a tort action is "on the policy." *Id.* at 203. The court rejected the bright-line extremes, and instead explained that determining whether a tort action is "on the policy" requires a case-by-case analysis of the nature of the tort claim, the timing of the relevant events, and the type of damages requested. *Id.* The court noted that decisions from other courts applying a case-by-case analysis exempted bad faith claims from policy limitation clauses where the "bad faith occur[ed] either before or after the loss which triggers policy coverage." *Id.* at 204. Bad faith claims that occurred either before or after the loss included situations where plaintiff alleged fraud and negligence during policy purchase negotiations, *Hearn v. Rickenbacker*, 400 N.W.2d 90, 93 (Mich. 1987), and where plaintiff's claim related to the insurer's conduct with respect to repair of previously damaged property, *Murphy v. Allstate Ins. Co.*, 147 Cal. Rptr. 565, 571 (Ct. App. 1978). It contrasted these situations with cases "'where denial of the claim in the first instance is the alleged bad faith and the insured seeks policy benefits'" and noted that these cases generally upheld the application of the policy limitation clause. *Stahl*, 517 N.W.2d at 204 (quoting *Velasquez v. Truck Ins. Exchange*, 5 Cal. Rptr. 2d 1, 5-6 (Ct. App. 1991)).

¶ 27. The *Stahl* court then went on to specifically consider the case before it. The court held that the plaintiff's bad faith claim was subject

to the policy limitation clause because it was "a disguised attempt to resolve a dispute as to [defendant's] liability for his loss and is therefore an action 'on this policy.'" *Id.*; see also *Ingrim v. State Farm Fire & Cas. Co.*, 249 F.3d 743, 746 (8th Cir. 2001) (applying Iowa law). The Couch on Insurance treatise summarizes *Stahl* and other like cases as holding:

> For purposes of determining whether actions against the insurer are collateral, such that suit limitation clauses do not apply, an action is collateral if the elements of a tort are satisfied in a manner distinct from breach of contract, but if the action is nothing more than a breach of contract claim "disguised" as a tort, the action is not collateral and the policy's suit limitation clause applies.

16 Couch on Insurance 3d § 235:100, at 235-100 (2000). The *Stahl* analysis is consistent with our decision in *Gilman*, and we adopt it.

¶ 28. Applying the *Stahl* analysis to plaintiff's complaint, we must hold that the claim that defendant violated the covenant of good faith and fair dealing is subject to the policy limitation clause. In his complaint, plaintiff set out the claim of breach of implied covenant of good faith and fair dealing in the same count as the claim for breach of contract. Moreover, the substance of the allegations are so conflated that the claims are almost indistinguishable. Plaintiff never alleged the elements of a bad faith claim as set out in *Bushey*. See 164 Vt. at 402, 670 A.2d at 809 (to recover on bad faith claim, plaintiff must show that insurer "had no reasonable basis to deny benefits of the policy" and "knew or recklessly disregarded the fact that no reasonable basis existed"). He alleged only that defendant did "not perform[] services in a professional manner or consistent with the requests or known expectations of the plaintiff." As in *Stahl*, we conclude that plaintiff's bad faith claim is merely a disguised attempt to resolve a dispute as to liability for his loss and is therefore subject to the policy limitation clause. Because plaintiff did not file suit within the two-year period from the loss specified in that clause, his count for breach of the covenant of good faith and fair dealing was barred by the clause.

¶ 29. While, as we stated above, plaintiff does not dispute that he failed to file his complaint within the two-year limitation period specified in the policy, he argues that defendant waived the limitation because it failed to notify plaintiff that the time for suit had nearly run. In making this argument, plaintiff relies upon Fair Claims Practices

Act Regulation 79-2 S 6[4] of the Vermont Department of Banking, Insurance and Securities, as enacted pursuant to 8 V.S.A. § 4812. This exact argument was raised and rejected in *Gilman*, and we reject it for the same reason in this case. See *Gilman*, 2003 VT 55, at ¶ 10. As we noted in *Gilman*, the regulation applies only when the insurer and insured are in active negotiation, the negotiations were continuing and insured was not represented by an attorney. *Id.* Plaintiff, however, did not provide evidence that negotiations were ongoing, that he communicated to defendant his dissatisfaction with the result, or that defendant had reason to believe he was not represented by an attorney. According to the record, after it denied his claim, defendant received no communications from plaintiff until nearly a year had passed. Even then, there was no negotiation; defendant received only inquiries, one from plaintiff's roommate, and one from plaintiff's attorney. The next exchange on the record occurred four years later, well after the limitation period had expired. As there are no disputed material facts that could satisfy the elements of the regulation, we affirm the trial court's determination that the regulation is inapplicable. See *id.*; see also *Hebert v. Jarvis & Rice & White Ins., Inc.*, 134 Vt. 472, 475, 365 A.2d 271, 273 (1976) (when defendant raises policy limitation clause and shows by affidavit that the time limit has expired, plaintiff must show by affidavit or otherwise specify facts demonstrating a genuine issue of fact to avoid summary judgment). Because plaintiff's allegations in his complaint for breach of contract and breach of the implied covenants of good faith and fair dealing were subject to the policy limitation clause and was not filed within its two-year limit, and defendant did not waive reliance on the clause, the complaint was properly dismissed.

*Affirmed.*

---

[4] Regulation 79-2 S 6 provides:

E. Insurers shall not continue negotiations for settlement of a claim directly with a claimant who is neither an attorney nor represented by an attorney until the claimant's rights may be affected by a statute of limitations or a policy or contract time limit, without giving the claimant written notice that the time limit may be expiring and may affect the claimant's rights. Such notice shall be given to first party claimants thirty (30) working days and to third party claimants sixty (60) working days before the date on which such time limit may expire.