North Hero Marina v. Melanson, No. 607-02 CnC (Katz, J., July 30, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                   SUPERIOR COURT
Chittenden County, ss.:                        Docket No. 607-02 CnCv


NORTH HERO MARINA

v.

JAMES MELANSON


FINDINGS OF FACT
CONCLUSIONS OF LAW
AND NOTICE OF DECISION


     This matter was tried to the court January 13, 2004. On the basis of the evidence presented, the following decision is announced.

FINDINGS OF FACT

1.      Plaintiff is a business operating a marina on Pelot's Point, North Hero.  The business is a corporation, with all stock held by Brett Kernoff and his wife.  The two of them also own the real estate, outside the corporation.

2.      Plaintiff contracted with defendant Melanson for electrical work on a store on the site, as well as to lay underground cable to provide power on a dock.  In the process of forming that contract, Melanson misrepresented himself as a licensed, master electrician.  He is not.  He is experienced as an electrician, and was at one time licensed in Maine, but not at that level, and never in this state.

3.      Although there may have been some confusion regarding the "person" for whom the work was done, defendant did bill the job to North Hero Marina, and North Hero Marina, Inc. issued the checks which paid for it.  There was never any communication, or even any uncommunicated thought, suggesting that the work was being done for any party but the marina business.

4.      As the work was to be done on a commercial location, requiring a licensed master electrician to be in charge, the permit was obtained under the name of Dwayne Cormier, who is such a person.  Melanson planned to do the job with Cormier, in which case it could have been done in only two days, as originally envisioned.  Unfortunately, Cormier became ill, was hospitalized, and was not available to work on the job.  Melanson did virtually the entire job, alone and unsupervised.

5.     Plaintiff paid Melanson $4,000.  Defendant maintains $355 remains unpaid.

6.     After the job was virtually completed, plaintiff's officer, Kernoff, became aware that Melanson was not licensed.  He had already thrown Melanson off the site, ordering him not to return, because Melanson tried to collect his bill in front of marina customers.

7.     Cormier actually completed a very small amount of the work, such as hanging light fixtures from boxes installed and wired by Melanson.

8.     Melanson may never have arranged for a rough-in inspection of his work, before walls were enclosed, thereby hiding the new wiring.  There is no proof, however, either that the marina has been harmed by the lack of such an inspection or that any of the interior wiring is improper.  Department records suggest there was such a rough-in inspection.

9.     The most serious problem raised by the evidence was of an underground cable running from a box on the shed, to a panel closer to the lakeshore.  William Bissell, whom the court found to be a creditable witness, testified that the source box had a 100 amp breaker, serving a line rated for only 90 amps.  Hence, the line is insufficiently protected, although not by a large margin.  What troubled Bissell more is that the other end of the line revealed only a 65 amp line coming up out of the snow.  When he learned in court that this buried line was installed within conduit, he felt it must be an improper installation.  Bissell infers this because, although underground splices are permitted, splices within conduit are not, for pulling the line through the conduit would place undue

stress on the splice. He therefore infers that Melanson improperly spliced an insufficient line served by too large a breaker.

Although we find Bissell a reliable witness, he only went to the site this morning, and saw what he could with snow on the ground. This is also a line running past a subsequent installation of fuel tanks with electric pumps. In the seven years since the line was originally installed, what was done to the line or the breaker serving it? We can't know. Particularly when the "popping" of breakers has been a problem for the marina. Whatever Melanson's faults, he had little reason to splice insufficient cable to complete this job, which was always one paid on the basis of time and materials. If he had to buy heavier line, he probably would have slightly increased his margin. He has no incentive to splice improper line and thereby save the customer money.

We do not know why there is a 65 amp line emerging from the snow, but we are unable to find, by a preponderance of the evidence that it is because Melanson put it there.

10.     This line to the lakeshore ultimately services eight slips on the west dock at the marina. Eight slips should be served by 216 amp capacity, under the National Electrical Code. At present, this is served by 100 amp breakers with possibly a portion of 65 amp cable, as indicated above. We have previously indicated why we are unable to find that the insufficient cable is the fault of Melanson.

This was a job without any written specifications. Melanson testified that the line to the dock was only to serve the owner's boat. The marina manager, Kernoff, denied any such limitation. But without any written specs for the job we are unable to find that the original installation was specified, even if orally, for the eight slips which now have power outlets running off the line.

11.     Kernoff was satisfied with Melanson's work.  He threw Melanson off the site only because of the latter's efforts to collect the balance of the bill in front of customers.  On August 26, 1997 Kernoff wrote Melanson that he considered the bill fully paid, at $4,000; that he "enjoyed working with [Melanson;] and [that he] would have preferred an ongoing relationship."  On September 20, it having come to Kernoff's attention that Melanson had not been licensed, he threatened a treble damage lawsuit if the entire price of the job were not returned.  Having had both an incentive to argue over whether the last eight per cent of the bill was actually owing, and whether he should get the price back because of licensing, Kernoff could still find nothing wrong with the work.  While we recognize that he is not an electrician, we conclude that this dispute had its origin in legalistic considerations, rather than workmanship.

CONCLUSIONS OF LAW

12.     Plaintiff marina asserts violations of the Vermont Consumer Fraud Act, 9 V.S.A. § 2453 *et seq*., against Melanson.  The Consumer Fraud Act authorizes two types of civil actions.  9 V.S.A. §§ 2460, 2461.  The first is initiated and run by the Attorney General or a State's Attorney, and the second is a private right of action limited to consumers as defined in 9 V.S.A. § 2451a(a).  Plaintiff marina seeks damages against Melanson under this second type of action.  Originally, a corporation was not permitted to bring such a claim since it fell outside the definition of "consumer."  Int'l Collection Serv., 156 Vt.540, 542–45 (1991).  That definition, however, was amended in 1997 by Act No. 42 of the Vermont General Assembly.  1997 Vt. Acts & Resolves No. 42, § 1.  The purpose of the amendment was to overrule Int'l Collection Serv. and "create a

private cause of action for businesses under Vermont's consumer fraud statute . . ." H. 226, 1997 Gen. Assem., Reg. Sess. (statement of purpose). As such, North Hero may bring a private action under 9 V.S.A. § 2461(b).

13. We conclude that Melanson engaged in a deceptive and unfair act in misrepresenting himself to the customer.

14. We also conclude that plaintiff has failed to prove any harm or cognizable injury resulting from improper workmanship on the part of Melanson; since the Consumer Fraud Act does apply, we are faced with the question of what, if any, damages to award. Compare Greene v. Stevens Gas Co., 2004 VT 67, ¶ 13 ("Although we read broadly the requirement that there be injury, there must be some cognizable injury caused by the alleged consumer fraud.") (citation omitted); with Peabody v. P.J.'s Auto Village, Inc., 153 Vt. 55, 57 (1990) (actual damages are not necessary for a plaintiff to prevail in a consumer fraud action).

15. North Hero is eligible for any appropriate equitable relief such as the amount of damages suffered or the consideration. 9 V.S.A. § 2461(b). As we previously concluded, North Hero did not suffer any damages as a result of Melanson's misrepresentations. Melanson's violations, while more than mere technical violations of the Consumer Fraud Act, do not require the disgorging of consideration. Cf. D.J. Painting v. BarawEnters., 172 Vt. 239, 242, 246 (2001) (no equitable relief where contract dispute did not lead to either unjust enrichment or quantum meruit). Melanson provided a valuable service to North Hero, for which he was compensated. There has been no causal link between the damages claimed by North Hero and the work done. Therefore, we decline to extend any type of equitable relief to North Hero.

16.     Since North Hero has not proven injury, there is no violation of the Consumer Fraud Act.  Greene, 2004 VT 67, ¶ 13.  By extension, North Hero is not entitled to attorneys' fees.  However, even if Melanson's deceptive act were to somehow trigger the reasonable attorneys' fees portion of the Consumer Fraud Act, see Gramatan Home Investors Corp. v. Starling, 143 Vt. 527, 535–36 (1983), the defendant's complete lack of damages coupled with the nature of Melanson's consumer fraud would require that we interpret "reasonable" in this case to be very low. See Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392 (3d Cir. 2004) ("The term reasonable does impart a sense of proportionality between an amount of damages and an award of attorneys' fees") (citation omitted); Branigan v. Level on the Level, Inc., 740 A.2d 643, 646–47 (N.J. Super. Ct. App. Div. 1999) (granting only limited attorney's fees for a mere technical violation of consumer fraud laws); Tibbetts v. Sight 'n' Sound Appliance Centers, Inc., 77 P.3d 1042, 1051–54 (Okla. 2003) ("For a private action to succeed the plaintiff must prove damages. Nowhere in [the Consumer Fraud Statute] is it indicated that attorneys are entitled to be compensated for merely showing some violation of the OCPA that caused no damages to their clients."); see also Pitchford v. Oakwood Mobile Homes, Inc., 212 F. Supp. 2d 613, 620–21 (W.D. Va. 2002) (damage award essential to meaning of "prevail" for attorneys' fees). This position is supported by the statute, which does not create a "private attorney general," but rather vest in the real Attorney General the power to pursue nominal offenders.  Tibbetts, 77 P.3d at 1051 (citing Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975) (rejecting private attorney generals as a disfavored encroachment on the American Rule)).  Due to the mandatory nature of attorneys' fees under the Consumer Fraud Act, we would be compelled to award plaintiff

attorneys' fees.  <u>Winton v. Johnson & Dix Fuel Corp.</u>, 147 Vt. 236 (1986).
But we believe that reasonable attorneys' fees should dovetail with its
damages; such fees are appropriately awarded to prove the deception, but
not in situations where there are no actual damages..

17.     Exemplary damages require an additional finding of malicious
conduct warranting their imposition.  <u>Bruntaeger v. Zeller</u>, 147 Vt. 247,
253–54 (1986).  Despite Melanson's misrepresentation, we find no malice
or wanton disregard in his actions.  His lie, while a violation of the rules
governing electrical work, 26 V.S.A. § 881 *et. seq.*, did not damage North
Hero.  Nor does the evidence suggest that Melanson intended to provide
inferior or defective workmanship or anything less than what North Hero
wanted.  We find it persuasive that Melanson did attempt to work under
the supervision of a master electrician in conformity with the rules.  With
a lack of malice, no exemplary damages can be awarded.  <u>Bruntaeger</u>, 147
Vt. at 253–54.

        Based on the foregoing, judgment is for the defendant.   Motion to
re-open denied as moot.

        Dated at Burlington, Vermont, _____, 2004.

                                        _____

Judge