Hicks v. Liberty Mut. Group, Inc., No. 550-8-10 Wrcv (Hayes, J., Dec. 27, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| SUPERIOR COURT | CIVIL DIVISION |
| --- | --- |
| Windsor Unit | Docket No. 550-8-10 |
| Wrcv | |

William Hicks,
 Plaintiff

 v.

Liberty Mutual Group, Inc.,
 Defendant

Decision on Defendant's Motion to Dismiss/Motion for Summary Judgment

The question presented is whether plaintiff's complaint is barred by a one-year suit limitations provision contained in the homeowners' insurance policy.

The following facts are set forth in the light most favorable to plaintiff. Plaintiff William Hicks lost his home to a fire in January 2009. His insurance carrier, defendant Liberty Mutual Group, agreed to cover the loss and to provide living expenses for nine months while the repairs took place. About three months later, however, the foundation walls collapsed and other water damage was discovered. Plaintiff believes that these additional losses were caused by the firefighting efforts and submitted an insurance claim to that effect. After inspecting the damage, the insurance company concluded that the additional losses were unrelated to the fire, and therefore denied the claim by letter dated July 14, 2009.

Plaintiff's attorney thereafter initiated a series of communications with the insurance adjuster that lasted into early September 2009. Although not all of the correspondence is included in the record, the general impression is that the parties were

disagreeing about whether the additional losses should be covered by the policy. Interwoven with these disagreements were expressions of confusion as to whether plaintiff could begin repairing the rest of the house pursuant to the original insurance claim, or whether additional insurance approvals were needed with respect to the foundation. As a result of the adverse coverage decision, plaintiff could not afford to repair the foundation, and therefore could not begin repairing the house, even though that work would have been covered by the initial coverage determination.

Plaintiff commenced this action by filing on August 30, 2010. Defendant has filed a motion to dismiss, or in the alternative a motion for summary judgment, in which it argues that the action is barred by a suit limitations provision contained in the insurance policy. The provision states that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of the loss." Defendant argues that the "date of the loss" was the day in April 2009 when plaintiff discovered the collapsed foundation walls and the water damage, and that the present complaint was therefore untimely when filed in August 2010.

Defendant acknowledges that some courts have held that the "date of the loss" means the date on which the cause of action accrued. Even then, defendant argues that the cause of action would have accrued on the date of its denial of insurance coverage, which was July 14, 2009. Defendant thus argues that the complaint was untimely filed even if the "date of the loss" is measured by the date on which the cause of action accrued.

In response, plaintiff argues that the complaint was not untimely because the parties were still negotiating, arguing, and discussing potential coverage of the additional

2

losses into September 2009. Although not expressly stated by plaintiff in such terms, plaintiff's position is that defendant should be estopped from asserting the limitations period because defendant has not complied with its own policies, and because defendant created confusion by unreasonably delaying approval for the original repair work. In sum, plaintiff argues that the limitations provisions do not apply to his claims, that the "date of the loss" should be the date on which the cause of action was discovered, and that defendant by its conduct either waived reliance on the limitations period or should be estopped from asserting it.

A threshold question is whether the suit limitations provision is enforceable. Vermont insurance law provides that homeowners' insurance policies may not include a provision "limiting the time of commencement of an action on such policy or contract to a period less than 12 months from the occurrence of the loss, death, accident or default." 8 V.S.A. § 3663. Conversely, suit limitations provisions are "valid and enforceable against an insured" so long as the limitations period is "not less than 'twelve months from the occurrence of the loss.'" *Gilman v. Maine Mutual Fire Ins. Co.*, 2003 VT 55, ¶ 9, 175 Vt. 554 (mem.) (quoting 8 V.S.A. § 3663). Here, the limitations period was precisely twelve months from the date of the loss; the provision is thus enforceable. *Schlitz v. Lowell Mut. Fire Ins. Co.*, 96 Vt. 334, 336–37 (1923).

The next question is whether the limitations provision applies to plaintiff's claims for breach of contract and bad faith. The rule here is that contractual limitations provisions apply only to claims that are "on the policy," meaning claims based upon a breach of the insurance contract, and not to other litigation between an insurer and the insured. *Greene v. Stevens Gas Service*, 2004 VT 67, ¶¶ 21–22, 177 Vt. 90. As such,

3

plaintiff's claim for breach of contract is clearly subject to the limitations provision, but there is a more difficult and nuanced question as to whether plaintiff's bad-faith claim is also subject to the limitations provision, in whole or in part.

Plaintiff has made clear that his bad-faith claim is modeled on *Bushey v. Allstate Insurance Co.*, 164 Vt. 399, 402 (1995), in which the Vermont Supreme Court expressly recognized a cause of action based upon the "bad-faith failure of an insurer to pay a claim filed by its insured." The Court also explained that the first-party-bad-faith claim sounds in tort rather than in contract. *Id.* Plaintiff therefore argues that his bad-faith claim, as a tort, should not be governed by the contractual limitations provision.

As *Greene* explained, there is a split of authority as to whether bad-faith claims are actions "on the policy" so as to be subject to contractual limitations provisions. Some courts have held that bad-faith claims are always subject to the limitations provisions, and other courts have held that such claims are never barred by contractual agreements. In *Greene*, the Vermont Supreme Court rejected both of these approaches and held instead that "determining whether a tort action is 'on the policy' requires a case-by-case analysis of the nature of the tort claim, the timing of the relevant events, and the type of damages requested." 2004 VT 67, ¶¶ 26–27 (following *Stahl v. Preston Mut. Ins. Ass'n*, 517 N.W.2d 201, 203–04 (Iowa 1994)).

*Greene* then clarified that bad-faith claims are "on the policy" when the "denial of the claim in the first instance is the alleged bad faith and the insured seeks policy benefits." 2004 VT 67, ¶ 26 (quotation omitted). In other words, if the bad-faith claim is that the insurer knew or should have known that there was no reasonable basis for the coverage denial, the claim is "on the policy" and subject to the suit limitation clause. *Id.*;

4

*Stahl*, 517 N.W.2d at 204. On the other hand, if the alleged bad faith occurred either before or after the coverage determination, then the claim is not "on the policy," and is not barred. *Greene*, 2004 VT 67, ¶ 26. Thus, limitations clauses do not bar claims based on alleged misrepresentations made during policy purchase negotiations, e.g., *Hearn v. Rickenbacker*, 400 N.W.2d 90, 93 (Mich. 1987), or based on insurer misconduct with respect to payment of covered claims or completion of covered repairs, e.g., *Murphy v. Allstate Ins. Co.*, 147 Cal. Rptr. 565, 569–71 (Cal. Ct. App. 1978).

Here, the bad-faith claim is that defendant unreasonably denied coverage for the additional losses without having a legal or factual basis for such denial. Because this is precisely the sort of bad-faith-denial-of-coverage claim that is considered to be "on the policy" under *Greene* and *Stahl*, the bad-faith claim is subject to the suit limitations provision in this case.[1]

The next question is whether the claims are in fact barred by the limitations provision. In undertaking this analysis, the court must ask first whether the term "date of loss" means the date of the fire or the date on which the causes of action accrued. Although the question is not expressly answered by existing Vermont cases, the insurance policy in this case was printed on a standard form, and so the issue has arisen in other courts.

---

[1] Having said that, there are allegations in plaintiff's complaint that can be construed as claiming that defendant acted unreasonably with respect to *completion of the initial covered repairs* by instructing plaintiff to stop repair work until such work was approved by the adjuster, and then by unreasonably delaying that approval. In other words, plaintiff's complaint can be read as alleging that defendant's conduct after the coverage decision has prevented plaintiff from realizing the initial covered benefits. Such a claim would not be covered by the suit limitations provision. *Greene*, 2004 VT 67, ¶ 26. It is not clear to the court whether plaintiff is actually seeking damages with respect to these allegations or not. But given the early stage of the litigation and the fairly undemanding standards of notice pleading, it is the obligation of the court to make sure that it is not overlooking some component of the plaintiff's claim. The court anticipates that further discovery will clarify the exact scope of plaintiff's claims.

Predictably, there is a split of authority, although a lopsided one. Almost every court has held that the "date of the loss" or some similar phrase for purposes of an insurance limitations provision means the date of the occurrence that triggered coverage under the insurance policy. As a merely representative sample of that position, see, e.g., *Bacewicz v. NGM Ins. Co.*, 2010 WL 3023882 at *8 (D. Conn. Aug. 2, 2010); *Thornton v. Georgia Farm Bureau Mut. Ins. Co.*, 695 S.E.2d 642, 644 (Ga. 2010); *Lanier v. State Farm Fire and Cas. Co.*, 2009 WL 926914 at *3 (W.D.N.C. Mar. 31, 2009).

Other courts have held that the "date of the loss" is the date on which the cause of action accrued. Of the more recent cases, the best representative is *Fabozzi v. Lexington Ins. Co.*, 601 F.3d 88 (2d Cir. 2010), in which the Second Circuit reviewed New York state insurance law and found that although state law was clear that the phrase "inception of the loss" mean the occurrence of the fire or other loss, the phrase "date of the loss" was not defined by the cases or the insurance policy at issue. To define the term, therefore, the Second Circuit relied upon the general rule for statutory limitations provisions, which is that the limitations period begins to run only when the conditions precedent to filing suit have been satisfied. Accordingly, the holding in *Fabozzi* was that the "date of the loss" meant the date on which the cause of action accrued. *Id*. at 91–93.

Existing Vermont cases suggest that the "date of the loss" has always been understood to mean the date of the occurrence giving rise to insurance coverage. In *Gilman v. Maine Mutual Fire Insurance Company*, for example, the Supreme Court held that the insured's complaint was untimely where it was filed "more than thirty-four months after the date of the loss," the timing of which expressly refers to the date of the fire. 2003 VT 55, ¶ 9, 175 Vt. 554 (mem.). Similarly, in *Hebert v. Jarvis & Rice and*

6

*White Ins., Inc.*, the Court was operating on the assumption that the "date of the claimed loss" was the date on which the insured's discovered the smoke damage in the home. 134 Vt. 472, 475 (1976). No contrary indication appears in the cases.

Moreover, as explained in more detail above, the statute governing the validity of insurance suit-limitations provisions prohibits only those policies that limit the time of the commencement of an action "to a period less than twelve months from the occurrence of the loss." 8 V.S.A. § 3663. Given that all of the cases have assumed that this meant the date of the fire or other loss, e.g., *Schlitz*, 96 Vt. at 335, it makes sense that the insurance policy in this case, by referring to the "date of the loss," would be referring to the minimum period prescribed by the statute, and thus referring to the date of the occurrence that gave rise to the insurance claim.

In resolving questions of contract interpretation, the role of the court is to implement the intent of the parties as it is reflected in the plain language of the agreement. In addition, when interpreting the language of insurance policies, the rule is that any ambiguity must be construed against the insurer. *Vermont Mut. Ins. Co. v. Parsons Hill Partnership*, 2010 VT 44, ¶ 21. But here there is no ambiguity: Vermont law has never suggested that the date of the loss is anything other than the date of the occurrence, and the plain language of the policy is that the limitations period began to run on the date of the loss, and not when the cause of action accrues, or on some other date.[2]

It is undisputed that the foundation walls collapsed in April 2009, and that the other water damage was discovered around the same time. The "date of the loss" was

---

[2] Adding support for this conclusion is the proof of loss form that plaintiff submitted to the insurance company. The "date of loss" stated on that form is the date of the fire.

therefore April 2009, and in the absence of a tolling of the limitations period based upon waiver or estoppel, the complaint was untimely filed in August 2010.

On estoppel, "[i]t is unquestionably the law that any line of action on the part of the defendant which led the plaintiffs reasonably to believe that their claim would be paid without suit would estop the defendant from setting up the limitation provided in the policy." *John Morrell & Co. v. New England Fire Ins. Co.*, 71 Vt. 281, 285 (1899). In other words, insurers are not permitted "to hold out the hope of payment and thus cause the plaintiffs to delay suit until the limited time had expired, and then interpose the condition in the policy in defense to an action." *Id.*; accord *McLaughlin v. Blake*, 120 Vt. 174, 179 (1957); *Nat'l Refrigeration, Inc. v. Travelers Indem. Co. of America*, 947 A.2d 906, 911 (R.I. 2008) (reviewing application of estoppel to insurance coverage disputes).

Plaintiff contends that there were ongoing negotiations and other communications that led him to believe that the coverage dispute was going to be resolved without the necessity of a lawsuit. In particular, he alleges that he was told not to do anything to repair the property until the adjuster approved the work, and that he was thereby placed in a "Catch-22" situation: the insurer had approved nearly $100,000 in repairs to the house as a result of the original fire, and time was running out on plaintiff's ability to make these repairs, but plaintiff could not begin this work until the foundation repair work was approved. The inference to be gathered here is that plaintiff felt that the approval was forthcoming, and that a lawsuit would not be necessary to resolve the coverage issues.

Defendant argues in response that there is nothing in plaintiff's affidavit that actually says that plaintiff was misled about the date for filing suit. But if defendant's motion is construed as seeking dismissal of the complaint for failure to state a claim upon

8

which relief can be granted under Rule 12(b)(6), then it does not matter what plaintiff said in his affidavit, for the question is whether "it appears beyond doubt that there exist no circumstances or facts which the plaintiff could prove about the claim made in his complaint which would entitle him to relief." *Ass'n of Haystack Property Owners, Inc. v. Sprague*, 145 Vt. 443, 446 (1985). Here, it is possible that there are facts supporting the estoppel theory. And if defendant's motion is construed as seeking summary judgment, the adequacy of plaintiff's affidavit is still not dispositive because the motion for summary judgment was not directed towards teasing out all the facts necessary to the estoppel analysis. Defendant's motion instead sought summary judgment based solely on its "date of the loss" argument. Plaintiff responded by advancing a theory of estoppel, and only in the reply brief did defendant argue for the first time that estoppel was not an available theory here. Given this posture, the court cannot say that the record is developed enough to permit adjudication of the estoppel theory at this time. At the very least, there appear to be disputed issues of fact.

It must be noted that there are obstacles to the estoppel theory. In particular, "mere negotiations between an insurer and a claimant cannot alone justify the application of estoppel." *Nat'l Refrigeration, Inc.*, 947 A.2d at 911 (quotation omitted). It is not clear from the existing record whether anything was said that actually "assured the claimant that a settlement would be reached, thereby inducing a late filing," or whether "the insurer has intentionally continued and prolonged the negotiations in order to cause the claimant to let the limitation pass without commencing suit." *Id*. (quotation omitted). Nor is it clear whether any such communication would have taken place after August 30, 2009—the limited record suggests that most communications between plaintiff's attorney

9

and defendant took place before that date. But the record is not sufficiently developed at this time to permit a dispositive ruling based upon these observations.

For these reasons, the court holds that plaintiff's claims are subject to the contractual limitations provision, but factual issues remain as to whether the doctrine of estoppel prevents the insurer from relying on the limitations clause in this case. Other questions remain as to whether plaintiff is seeking damages based upon the insurer's conduct with respect to completion of the initial covered repairs, as discussed above in footnote 1. Because these issues require further adjudication, defendant's motion to dismiss (or for summary judgment) is denied.

On October 28, 2010, plaintiff moved to amend the complaint to add a claim under the Vermont Fair Claims Practices Act, 8 V.S.A. § 4721. The motion is denied as futile because it is well-established that the statutory section relied upon provides administrative sanctions for unfair and deceptive acts in the insurance industry, but "does not create a private right of action." *Wilder v. Aetna Life & Casualty Ins. Co.*, 140 Vt. 16, 19 (1981).

On December 13, 2010, plaintiff moved again to amend the complaint to add a claim for consumer fraud. The allegation is that defendant's "representations, directions, practices, policies, omissions and conduct above all misled plaintiff in properly pursuing his insurance claim with defendant." This allegation, however, does not sufficiently explain with particularity what representations constituted consumer fraud, V.R.C.P. 9(b), or how plaintiff's claim is different than the denial-of-coverage-as-consumer-fraud claim that was expressly rejected as inadequate in *Greene v. Stevens Gas Service*, 2004 VT 67, ¶ 15, 177 Vt. 90 (holding that denial of coverage is not sufficient to support a

10

CFA claim). Plaintiff's motion to amend the complaint to add a claim for consumer fraud is therefore denied, but plaintiff is invited to file another motion to amend the complaint that more particularly describes the acts that allegedly constitute consumer fraud.

**ORDER**

(1) Defendant's Motion to Dismiss (MPR #1), filed Sep. 20, 2010, is ***denied***;

(2) Defendant's Motion for Summary Judgment (MPR #2), filed Sep. 20, 2010, is ***denied***;

(3) Plaintiff's First Motion to Amend Complaint (MPR #3), filed Oct. 27, 2010, is ***denied***; and

(4) Plaintiff's Second Motion to Amend Complaint (MPR #4), filed Dec. 13, 2010, is ***denied***.

Dated at Woodstock, Vermont this 23rd day of December, 2010.

_____
Katherine A. Hayes
Superior Court Judge