Record v. Kempe (2005-224)

2007 VT 39

[Filed 04-May-2007]

 NOTICE: This opinion is subject to motions for reargument under
 V.R.A.P. 40 as well as formal revision before publication in the Vermont
 Reports. Readers are requested to notify the Reporter of Decisions,
 Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of
 any errors in order that corrections may be made before this opinion goes
 to press.


 2007 VT 39

 No. 2005-224


 Bernard G. Record and Anna A. Record Supreme Court
 a/k/a Ann F. Record
 On Appeal from
 v. Windham Superior Court


 G. Steven Kempe and Lucy Mary Kempe May Term, 2006


 Karen R. Carroll, J.

 L. Raymond Massucco of Massucco Law Offices, P.C., Bellows Falls, for
 Plaintiffs-Appellees.

 Herbert G. Ogden of Ogden Law Offices, P.C., Rutland, for
 Defendants-Appellants.


 PRESENT: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

 ¶ 1. SKOGLUND, J. Defendants Mr. & Mrs. Kempe appeal a jury
 verdict in favor of plaintiffs Mr. & Mrs. Record on plaintiffs' claim that
 defendants breached a contract for the sale of plaintiffs' home. 
 Plaintiffs asserted they were entitled to retain defendants' deposit as
 authorized in the purchase and sale contract because defendants breached
 the contract. Defendants countered that they were entitled to return of
 the deposit because it was plaintiffs, in fact, who had breached the
 contract for sale. The jury found in favor of plaintiffs. We affirm.
 
 ¶ 2. In June 2001, defendants contracted to purchase plaintiffs'
 home and made a deposit of $21,600. The contract provided that if
 defendants discovered a defect in the title, defendants were required to
 notify plaintiffs, and plaintiffs would then have a minimum of thirty days
 from the date of notice to cure the defect. Specifically, the contract
 provided:

 Purchaser . . . shall notify Seller in writing prior to the date
 set for closing of the existence of any encumbrances or defects
 which are not excepted in this Contract . . . . In such event,
 Seller shall have an additional thirty (30) days from the time
 Seller receives such notice to remove the specified encumbrances
 or defects . . . . If, at the expiration of 30 days from the
 receipt of such notice or on the date set for closing, whichever
 is later, Seller is unable to convey marketable title free and
 clear of such encumbrances and defects, Purchaser may terminate
 this Contract, and, if so, shall receive back all deposit money
 and may, in addition, pursue all legal and equitable remedies
 provided by law.
 
 ¶ 3. Three days before the scheduled closing date, defendants'
 lawyer discovered a cloud on the title. The existence of the cloud on
 title is not disputed. (FN1) Defendants' lawyer telephoned plaintiffs'
 lawyer, described the title defect, and declared that his clients would buy
 the property only if the defect was cured. The next day, defendants'
 lawyer faxed a note to plaintiffs' lawyer which stated in total: "Buyers do
 not want to close with matter unresolved - 60 day contract extention
 [sic]." In addition, plaintiff Mrs. Record testified at trial that
 defendant Mr. Kempe specifically represented to her that defendants were
 willing to extend the contract for sixty days. The day after the lawyers
 first discussed the problem with the title, plaintiffs' attorney left for
 vacation, returning to Vermont thirteen days into the cure period. (FN2) 
 Sixteen days into the cure period, defendants sent a letter by certified
 mail to plaintiffs purporting to cancel the contract due to the cloud on
 the title and also because they were unwilling to pay the two extra
 interest payments that would come due on their bridge loan during a
 sixty-day delay.

 ¶ 4. Plaintiffs brought this action, asserting their right to retain
 defendants' deposit because defendants had breached the contract. 
 Defendants counterclaimed, alleging that plaintiffs breached the contract
 by failing to cure the title defect, and that defendants were entitled to
 recover their deposit as a result.

 ¶ 5. One of the issues the parties focused on at trial was whether
 plaintiffs would have been able to cure the title defect in the time
 allotted. In written discovery to plaintiffs, defendants asked plaintiffs
 to admit that they could not have accomplished a timely cure regardless of
 whether the grace period was thirty or sixty days. Plaintiffs failed to
 answer the discovery request, and defendants moved for partial summary
 judgment, relying in part on plaintiffs' implied admission that they could
 not have cured the defect in time. The court granted plaintiffs' request
 to withdraw the admission and denied summary judgment.

 ¶ 6. Defendants later moved to prevent plaintiffs from introducing
 evidence tending to demonstrate that the parties had made an oral
 modification to the contract to extend the cure period from thirty to sixty
 days. The court also denied this motion, instead placing the issue of oral
 modification before the jury. 
 
 ¶ 7. The jury returned a verdict in favor of plaintiffs, and the
 court awarded plaintiffs their attorneys' fees. Defendants filed this
 appeal. On appeal, defendants assert that they should have been granted
 summary judgment based on plaintiffs' implied admission that they could not
 cure the title defect in the time allowed. Defendants also argue that the
 superior court erred by instructing the jury that defendants were required
 to prove that it would be "impossible" for plaintiffs to cure the title
 defect in time. Instead, defendants allege, they were required to prove
 only that plaintiffs' performance was "highly unlikely." Defendants allege
 further error in the superior court's failure to instruct the jury that, in
 order for any oral modification of the contract to be valid, plaintiffs had
 to show they relied on the modification to their detriment. Finally,
 defendants claim that plaintiffs' lawyer should not have been permitted to
 both serve as a lawyer and a witness during the trial. (FN3) We address these
 in turn.

 I.


 ¶ 8. Defendants argue that, because plaintiffs had failed to timely
 respond to defendants' requests for admissions, plaintiffs impliedly
 conceded that they could not have cured the defect in title within either
 the thirty days provided in the purchase and sale contract or the sixty-day
 period allegedly created by oral modification. See V.R.C.P. 36(a)
 (providing that an issue subject to a request for admission is deemed
 admitted if the party to whom discovery is directed does not answer or
 object to the request within thirty days). The superior court granted
 plaintiffs' request to withdraw the implied admission, and denied
 defendants' motion for summary judgment. Defendants argue that this was
 error.
 
 ¶ 9. While we review de novo the legal conclusion underlying a
 decision to grant or deny summary judgment, defendants do not directly
 attack the merits of the summary judgment ruling. Rather, defendants take
 issue with the superior court's decision to allow plaintiffs to withdraw
 their discovery response. (FN4) Discovery rulings such as this are
 discretionary, and discretionary rulings "are not subject to review if
 there is a reasonable basis for the court's action." Cliche v. Fair, 145
 Vt. 258, 261, 487 A.2d 145, 148 (1984). Therefore, to support a claim of
 error defendants must show that "the court failed to exercise its
 discretion, or exercised it for reasons clearly untenable or to an extent
 clearly unreasonable." Id.

 ¶ 10. Under Vermont Rule of Civil Procedure 36(b), the court has
 discretion to allow withdrawal of an admission if "the presentation of the
 merits of the action will be subserved" by allowing withdrawal and the
 party who obtained the admission "fails to satisfy the court that
 withdrawal or amendment will prejudice that party in maintaining the action
 or defense on the merits." The court noted that, while plaintiffs had
 changed counsel right around the time the discovery response were due,
 which resulted in some confusion, plaintiffs failed to explain why they
 still did not respond when defendants pointed out their oversight in a
 letter nearly two months later. Nonetheless, the court allowed withdrawal
 because the facts that would be deemed admitted were "both key issues,"
 such that "denying Plaintiffs' motion would essentially preclude a
 determination of the substantive merits of the case." Further, the court
 found that defendants had failed to identify discovery that they would have
 pursued had they not relied on the admission; rather, defendants admitted
 they had continued with their original discovery plan because they
 anticipated that plaintiffs would ultimately seek to withdraw the
 admission. Thus, there was no showing of prejudice. While emphasizing
 that plaintiffs' delay in responding was not excusable, the court correctly
 noted that "excusable neglect is not a requirement for allowing withdrawal
 of admissions."

 ¶ 11. These conclusions provided a sound basis for the exercise of
 the court's discretion. We find no error in the court's decision to permit
 withdrawal of the admissions and deny defendants' motion for summary
 judgment.
 
 II.


 ¶ 12. Defendants also argue that the superior court erred in its
 instructions to the jury setting forth their defense. Defendants' theory
 at trial was that they were entitled to cancel the contract prematurely
 because plaintiffs would not have been able to cure the title defect in
 time, and therefore it would have been futile for defendants to wait until
 the end of the cure period to cancel the contract. In support of this
 notion, defendants cited Hall v. Hodgon, 114 Vt. 63, 69, 39 A.2d 195, 199
 (1944), for the general proposition that "the law does not require one to
 do a useless act." In their motion for summary judgment, defendants
 couched their theory in the following terms: "[A] demand for performance is
 unnecessary where there has been a prior absolute refusal or repudiation,
 or where the party from whom performance is due has placed it out of his
 power to perform, or has demonstrated his inability to perform." (Quoting
 17A C.J.S. Contracts § 478 (1963).) Along these lines, defendants
 requested that the jury be instructed that defendants had the right to
 cancel "if it was reasonably clear that [plaintiffs] could not show legal
 ownership within the agreed-upon time."

 ¶ 13. In formulating the jury instruction, however, the superior
 court relied on cases invoking the related but distinct doctrine of
 impossibility of performance. That doctrine applies to excuse a party's
 breach of contract where that party's own performance has become impossible
 due to an unanticipated change in circumstances. See, e.g., Agway, Inc. v.
 Marotti, 149 Vt. 191, 193, 540 A.2d 1044, 1046 (1988) (recognizing defense
 of impossibility of performance). Ultimately, the superior court gave the
 following instruction to the jury:

 If you find that a reasonable person under the same circumstances,
 having all of the information defendants and their attorneys had
 at the time, would have believed that it would have been
 impossible for plaintiffs to have cleared their title within the
 period of time agreed, you may find that defendants were justified
 in withdrawing from the contract. . . . [Y]ou must find that
 defendants withdrew from the contract for this reason.

 Defendants objected to this formulation of the instruction, pointing out
 that the issue was not whether defendants could be excused from performance
 under the contract, but rather whether plaintiffs would be able to meet
 their contractual obligations-namely, providing clear title to the
 property. (FN5) Defendants argued that their theory of the case-which
 defendants referred to as "futility"-was different than the concept of
 impossibility articulated by the court in its instructions.

 ¶ 14. On appeal, defendants reiterate their argument that the
 superior court's instruction erroneously confused the concepts of
 "futility" and "impossibility." Defendants further argue that the
 instruction was in error because defendants were required to prove only
 that it was "highly unlikely"-not "impossible"-for plaintiffs to clear
 title in time. A party who claims error in the jury charge has the burden
 of establishing both that the charge was wrong and that prejudice resulted
 from that error. Mobbs v. Cent. Vt. Ry., 155 Vt. 210, 218, 583 A.2d 566,
 571 (1990). In reviewing jury instructions, we look at them in their
 entirety. Winey v. William E. Dailey, Inc., 161 Vt. 129, 143, 636 A.2d
 744, 753 (1993). If the charge as a whole "breathes the true spirit and
 doctrine of the law and there is no fair ground to say the jury has been
 misled, there is no ground for reversal." Id. (quotations omitted). The
 instruction was a correct statement of the law and an accurate reflection
 of defendants' theory of the case.
 
 ¶ 15. Although defendants referred to their theory as the doctrine
 of "futility," their citations and arguments both in the superior court and
 on appeal make clear that defendants' theory of the case is grounded in the
 more familiar and contemporary contract doctrine of repudiation. When one
 party repudiates a contract, the other party is discharged from her duties
 under the contract and may bring an action for breach. See Lowe v. Beaty,
 145 Vt. 215, 218, 485 A.2d 1255, 1257 (1984) ("A repudiation before the
 time for performance constitutes an anticipatory breach of the
 agreement."); Restatement (Second) of Contracts § 253 (1981). A party
 repudiates a contract when that party explicitly or implicitly represents
 that he cannot or will not perform his obligations under the contract. 
 This can be accomplished by either:

 (a) a statement by the obligor to the obligee indicating that the
 obligor will commit a breach that would itself give the obligee a
 claim for damages for total breach . . . , [or]

 (b) a voluntary affirmative act which renders the obligor unable
 or apparently unable to perform without such a breach.

 Restatement (Second) of Contracts § 250. Implicit repudiation is also
 referred to as "apparent impossibility." See, e.g., Restatement (Second)
 of Contracts § 250, cmt. c. ("[A] party's act must be both voluntary and
 affirmative, and must make it actually or apparently impossible for him to
 perform.").
 
 ¶ 16. While defendants attempt to disavow the repudiation framework
 on appeal, it is beyond argument that this was their position at
 trial-regardless of the name they attached to their defense. First, as
 stated above, defendants referenced repudiation in their motion for summary
 judgment (arguing that, "a demand for performance is unnecessary where
 there has been a prior absolute refusal or repudiation, or where the party
 from whom performance is due has placed it out of his power to perform, or
 has demonstrated his inability to perform"). (Quoting 17A C.J.S. Contracts
 § 478 (1963).) Second, defendants requested a jury instruction stating
 that defendants had the right to cancel the contract "if it was reasonably
 clear that [plaintiffs] could not show legal ownership within the
 agreed-upon time." Third, the authorities cited by defendants set forth
 the doctrine of repudiation. For example, Drew v. Bowen, an early case,
 stands for the proposition that "where the nature of the defect of title is
 such that the vendor cannot acquire it, the purchaser may rescind and put
 an end to the contract to purchase, even before the day for the delivery of
 the deed arrives." 102 Vt. 124, 128, 146 A. 254, 256 (1929). Similarly,
 the section of Corbin relied on by defendants pertains to "Repudiation or
 Other Total Breach," and explains that repudiation may take the form of
 "express words or . . . an act that makes performance by the repudiator
 apparently impossible or very improbable." 9 A. Corbin, Contracts § 977,
 at 815-16 (1979).

 ¶ 17. As Corbin explains, a repudiation occurs "[i]f the promisor so
 acts as to make subsequent performance by him so difficult or expensive
 that it is reasonable for the other party to believe that the promisor
 intends not to perform." Id. § 984, at 840. This is consistent with
 Vermont's case law interpreting the term "impossible" in the context of a
 defense of impossibility of performance. We have previously equated the
 term "impossibility" with the term "impracticability" and defined both as
 involving "extreme and unreasonable difficulty, expense, injury, or loss to
 one of the parties." Agway, 149 Vt. at 193, 540 A.2d at 1046 (quoting
 Restatement (Second) of Contracts § 261 cmt. d)).
 
 ¶ 18. Thus, the concept of implicit repudiation (FN6) invoked by
 defendants revolves on the same concept of practical impossibility as the
 related defense of impossibility of performance. In one instance, the
 breaching party excuses his breach by claiming that circumstances made his
 own performance impossible. In the other, the breaching party seeks to
 excuse his breach by claiming that it was apparent the other party's
 performance was no longer possible. The superior court did not err in its
 instruction because impossibility of one's own performance and the apparent
 impossibility of the other party's performance are but two sides of the
 same doctrinal coin. There is nothing to suggest that the term
 "impossibility"-which we have previously equated with the term
 "impracticability"-has a different meaning in the context of another
 party's contractual performance. Id. at 193, 540 A.2d at 1046 (quoting
 Restatement (Second) of Contracts § 261 cmt. d)). There is no basis in
 case law or logic to apply a less stringent standard of impossibility (that
 performance is "highly unlikely") in the latter case. (FN7)
 
 ¶ 19. Defendants argue in the alternative that, even accepting the
 superior court's instruction, the evidence at trial met the standard on
 which the jury was instructed: that it would have been impossible for
 plaintiffs to clear the title within the time allotted. In reviewing the
 jury's verdict, we view the evidence in the light most favorable to the
 verdict, excluding the effect of modifying evidence, and will sustain the
 verdict if it is fairly and reasonably supported by any evidence. McGee
 Constr. Co. v. Neshobe Dev., Inc., 156 Vt. 550, 556, 594 A.2d 415, 418
 (1991). There was ample evidence from which the jury could have reasonably
 concluded that defendants failed to prove apparent impossibility.
 
 ¶ 20. As we have previously recognized, while the term
 "impossibility" has been expanded to include the concept of
 "impracticability," both terms are narrowly defined. See 30 Williston on
 Contracts § 77:1, at 277 (4th ed. 2004); see also Restatement (Second) of
 Contracts § 250 ("[I]mpossibility means not only strict impossibility but
 impracticability because of extreme and unreasonable difficulty, expense,
 injury or loss involved."). "While impracticability embraces situations
 short of absolute impossibility, mere increase in difficulty is not
 enough." 30 Williston, § 77:1, at 278. Thus, it is a "strict standard"
 that excuses nonperformance only when performance would cause "extreme,
 unreasonable, and unforeseeable hardship due to an unavoidable event or
 occurrence." Id. at 279; see also Agway, 149 Vt. at 193, 540 A.2d at 1046. 

 ¶ 21. In light of this standard and the evidence presented in this
 case, the jury could not have reasonably concluded that defendants were
 justified in deciding that plaintiffs' performance was "apparently
 impossible." Here, the bare fact that the parties' contract anticipated
 the possibility of a cloud on title and set a specific time period in which
 to cure demonstrates that such a contingency was neither unforeseeable nor
 extreme. See 30 Williston, § 77:1, at 279 (impossibility exists only where
 hardship is unforeseeable and extreme). Morever, not even defendants' own
 expert, who was their attorney at the time of the underlying contract
 between the parties, would testify that performance was impossible. 
 Rather, he went only so far on direct examination as to claim that "it was
 unlikely that [plaintiffs] were going to be able to resolve this within the
 thirty day period." According to his testimony, because of problems
 plaintiffs' attorney was having in getting the names of the potential
 parties to a probate proceeding, "we told our clients that we thought that
 this was not going to be completed in thirty days." The attorney
 acknowledged that "you can move pretty quickly" if you get the consents
 from the parties, but added that it "seemed unlikely" that plaintiffs could
 do that. When pressed on direct examination to quantify how unlikely, the
 best that the attorney could offer from defendants' perspective was "pretty
 unlikely."
 
 ¶ 22. We have already upheld the trial court's charge instructing
 the jury that it could find that defendants were justified in withdrawing
 from the contract if "a reasonable person under the same circumstances,
 having all of the information defendants and their attorneys had at the
 time, would have believed that it would have been impossible for plaintiffs
 to have cleared their title within the period of time agreed." Defendants'
 evidence failed to meet this standard. Indeed, based on the evidence
 presented by defendants, the jury could have concluded only that
 defendants' cancellation of the contract sixteen days into the cure period
 was premature.(FN8) This is true regardless of whether plaintiffs had
 thirty or sixty days to cure, and thus defendants' arguments regarding
 failure of the evidence of an extension of the cure period are not
 determinative of the outcome of this issue. (FN9) 
 
 III.


 ¶ 23. Finally, defendants argue that the trial court erred in
 denying their motion to disqualify plaintiffs' attorney, which was grounded
 on defendants' intention to call him as a witness. In making this
 argument, defendants rely on Vermont Rule of Professional Conduct 3.7,
 which permits a lawyer to be both a witness and an advocate at trial only
 when the testimony offered addresses an uncontested issue or
 "disqualification of the lawyer would work substantial hardship on the
 client." We find this argument unavailing for the following reasons.

 ¶ 24. The day before trial, the superior court denied defendants'
 motion to disqualify plaintiffs' attorney because (1) defendants made their
 motion orally minutes before the jury draw even though they had known for
 most of the two-year discovery phase of the litigation that plaintiffs'
 attorney would be testifying in the case; (2) defendants had ample time to
 seek relief from the court on this issue, but failed to do so; (3)
 defendants themselves intended to call (and in fact did call) plaintiffs'
 attorney as a witness to support their theory that plaintiffs could not
 have cured the defect in title within the time frame allowed by the
 parties' contract; (4) plaintiffs' attorney made reasonable accommodations
 to address the situation and had informed defendants of those
 accommodations; and (5) defendants had failed to make any proffer
 whatsoever as to what the substance of the testimony would be, how
 important the testimony was to their case, or whether the testimony would
 concern disputed facts.
 
 ¶ 25. Even if we determined that the trial court abused its
 discretion by denying defendants' motion under these circumstances, we
 conclude that defendants have failed to demonstrate any prejudice resulting
 from the ruling. As we held above, defendants failed to offer sufficient
 evidence for the jury to conclude that an objective person could believe it
 was impossible for plaintiffs to cure the title defect within the allocated
 time. Thus, the evidence solicited from plaintiffs' counsel was
 unnecessary and superfluous. Accordingly, defendants were not prejudiced
 by its admission in violation of the ethical code.

 Affirmed.


 FOR THE COURT:



 _______________________________________
 Associate Justice


------------------------------------------------------------------------------
 Footnotes

FN1. The nature of the cloud on the title is as follows. Plaintiffs had
 purchased the property from the Fishers, who had purchased it from Nellie
 Walker. Circumstances surrounding an earlier conveyance by Walker of a
 seven-acre portion of the property could support an argument that the
 Fishers held title to that portion only by operation of adverse possession. 
 In particular, while the land records indicated that Walker conveyed the
 subject property to the Fishers in 1944, a 1925 deed indicates that seven
 acres of the parcel of the land possessed by Walker had been reserved in a
 deed of conveyance to a Herbert Fletcher. No further mention of these
 seven acres is found in the deed of conveyance to the Fishers.

FN2. The parties calculate this period slightly differently, but this
 difference is not material to resolution of this appeal.

FN3. Defendants assert in passing that the award of attorneys' fees was
 excessive, but we do not address this issue as defendants offer no
 substantive argument on the point in their appellate brief.

FN4. Once the implied admission was permitted to be withdrawn, there was
 clearly a factual dispute as to whether plaintiffs could have cured title
 in time which precluded summary judgment. See V.R.C.P. 56(c) (summary
 judgment appropriate only where there are no genuine issues of material
 fact and moving party is entitled to judgment as matter of law); Greene v.
 Stevens Gas Serv., 2004 VT 67, ¶ 9, 177 Vt. 90, 858 A.2d 238 (same).

FN5. Specifically, in their supplemental submission in support of their
 proposed jury instructions, defendants asserted that

 The three authorities cited by the Court are inapposite because
 they say when a promisor may be excused from doing what he
 contracted to do on the grounds that it is impossible to do it. .
 . . The Kempes' actual defense, futility, is different. It says
 the Kempes are excused from waiting the 30 days to see whether the
 Records could clear the title that still existed on the agreed
 closing date, because there was little or no chance that the
 Records could do it in 30 days.

FN6. Defendants do not argue-nor could they, based on the evidence-that
 plaintiffs explicitly repudiated the contract by stating that they would
 not or could not perform.

FN7. We also note that a "highly unlikely" standard substantially diverges
 from the language that defendants themselves suggested in their proposed
 jury instructions.

FN8. The evidence at trial showed that, at the time defendants withdrew from
 the contract, plaintiffs were working to cure the alleged title defect. 
 Assuming that the shorter, thirty-day time period would have applied,
 plaintiffs had until September 29 or 30 to accomplish the cure. Assuming
 that the jury concluded that the parties had extended the cure period to
 sixty days, defendants would have had until nearly the end of October to do
 so. On September 14, plaintiffs' attorney filed a petition in Probate
 Court pursuant to 14 V.S.A. § 1801 to clear the discrepancy in the title. 
 The petition sought a determination that the heirs of Nellie Walker were
 not in possession of the subject real estate and were not entitled to
 maintain a suit for possession thereof. Included was a motion for service
 by publication supported by an affidavit that said, after diligent inquiry,
 plaintiffs could not locate all the heirs of Nellie Walker. By October 1,
 plaintiffs' attorney had notified the Probate Court that all heirs were
 identified and service by publication was unnecessary as the heirs could be
 notified directly. Consent of Judgment forms were sent to each heir along
 with the petition. Nonetheless, defendants asserted that it was highly
 unlikely that plaintiffs could clear the title within thirty days and that
 to wait until the thirty days had actually expired would be futile.

FN9. Defendants present a number of challenges to the superior court's
 evidentiary rulings that we do not address for the reasons stated below. 
 First, defendants argue that the court erred in excluding evidence of
 probate rules and procedures that would have demonstrated that it was
 impossible for Plaintiffs to cure the defect in title in either thirty or
 sixty days. Defendants do not demonstrate, however, how this ruling
 prejudiced presentation of their case, as defendants' attorney explained
 the probate process to the jury in detail. Second, defendants argue that
 it was error for the court to exclude evidence of what actually transpired
 following their cancellation of the contract, that is, whether Plaintiffs
 were successful in their efforts to clear the title and how long this
 process took. In light of the applicable standard-specifically, whether a
 reasonable person with the same information as that available to defendants
 would have believed it impossible for Plaintiffs to clear the title in
 time-the court was correct to exclude the evidence as irrelevant. The
 standard requires the jury to examine the reasonableness of defendants'
 decision in light of the information available to defendants at the time
 they decided to cancel the contract, not information that came to light
 only later. Third, defendants argue that the court erred in admitting
 certain evidence related to the issue of reliance. The question of reliance
 goes to the issue of whether the cure period was verbally extended. 
 Because the jury's verdict can be affirmed regardless of whether the jury
 found that there had been a verbal extension of the cure period, we need
 not address those arguments related to the verbal extension. Finally,
 defendants contend it was error to exclude evidence that they were
 financially capable of purchasing the house despite their decision to
 cancel the contract. As defendants conceded, such evidence would go to
 their motivation for canceling, not the reasonableness of their beliefs
 regarding whether Plaintiffs could perform, and is therefore not relevant
 to any element of their defense.