STATE OF VERMONT

ENVIRONMENTAL COURT

}
In re Krag Special Zoning Permit for Culvert[1]    }    Docket No. 51-4-09 Vtec
(Appeal of Marks)    }
}

Decision and Order on Pending Motions

Appellant Andrew Marks (Appellant) appealed from a decision of the Development Review Board (DRB) of the Town of Shelburne, upholding the Zoning Administrator's issuance of a special zoning permit to Appellee-Applicants David and Jesusa Krag (Applicants). The special zoning permit authorized Applicants to install a fifteen-foot culvert on their property. Appellant is represented by Thomas F. Heilmann, Esq.; Appellee-Applicants are represented by Michael T. Russell, Esq.; and the Town is represented by William E. Flender, Esq.

Applicants have moved for summary judgment or to dismiss all nine questions in the Statement of Questions. The following facts are undisputed unless otherwise noted.

Applicants own a 15.8-acre L-shaped parcel of property, which contains their residence, located at 76 Rivervale Road in the Town of Shelburne. Applicants' property is bounded on the north and west by the LaPlatte River, which makes a bend at the northwest corner of Applicant's property.

Appellant owns a 3.1-acre rectangular parcel of property, which contains his residence, located at 150 Rivervale Road in Shelburne. Appellant's property is bounded

---

[1]  This appeal was originally captioned In re Krag Excavation and Fill Permits. The caption has been changed to more correctly describe the permit that is the subject of this appeal.

by the LaPlatte River on the west, bounded by Applicants' property to the north and east, and bounded by an unrelated property to the south.

On July 2, 2008, the Zoning Administrator issued an earlier zoning permit to Applicants, which authorized them to construct a berm on their property (the Berm Permit). Prior to the issuance of the Berm Permit, Applicants' property had contained two ponds: a spring-fed pond used for swimming (the swim pond) and a pond at a lower elevation on Applicants' property fed by surface water (the lower pond). The Berm Permit authorized Applicants to dig a third pond (the upper pond) and to use the fill extracted from the upper pond to construct a berm, which was meant to prevent surface water from contaminating the swim pond.[2]

Appellant did not appeal the issuance of the Berm Permit to the DRB and it became final. 24 V.S.A. § 4472(d). It therefore cannot be challenged, either directly, or indirectly in the present appeal. See, e.g., In re: Freedom Foods, No. 243-10-08 Vtec, slip op. at 6 (Vt. Envtl. Ct. Mar. 19, 2009) (Wright, J.) (Where "Appellants did not appeal the issuance of the Zoning Permit to the DRB, . . . the zoning permit therefore cannot now be challenged, either directly, or indirectly in the present appeal." (citing 24 V.S.A. § 4472(d))). The berm and upper pond were constructed in accordance with the Berm Permit and are not at issue in this appeal.

On September 18, 2008, Applicants submitted a new application for "Extraction[,] Filling[,] or Removal of Natural Resource." (Ex. A).[3] The application sought approval to construct a

---

[2] The parties have not provided a copy of the Berm Permit or the application for the berm project, and have not provided a map or plan showing the exact locations of the ponds or of the berm project. Nevertheless, no party suggests that any material facts are disputed as to the berm project.

[3] No party suggests that this application was treated as requesting an amendment to the Berm Permit; rather, it appears to have been treated as a separate application requesting a new permit for the culvert project.

2

15" pipe to reestablish flow from pond.  Pipe end at surface of pond.  Pipe buried within berm.  Exit a[t] existing water collecting area.

This fifteen-foot pipe, also referred to as a culvert, is located entirely on Applicants' property and was intended to carry the flow of surface water from the area of the upper pond through the berm and into the lower pond, bypassing the spring-fed swim pond.

The Zoning Administrator approved the culvert application and issued Permit No. EF08-08 (the Culvert Permit) to Applicants on September 26, 2008.  (Ex. B).  The Culvert Permit described the project as a "[p]roposed earthwork/outflow pipe associated with excavation and fill project," and stated that

> [t]his letter constitutes a Special Zoning Permit, under § 1720.2 of the Town of Shelburne Zoning Bylaws, authorizing the work associated with the on-going construction of a pond/berm on your property. The project is approved as shown and described [in] the submitted application and site plan received by the Planning and Zoning Office on September 18, 2008.

As stated in the Culvert Permit, the Zoning Administrator reviewed and approved the proposed culvert project under § 1720.2 of the Town of Shelburne Zoning Bylaws (Bylaws), which governs projects that involve the "Extraction, Filling or Removal" of "loam, gravel, stone, fill, topsoil or other similar materials."[4]

The preceding provision in the Bylaws, § 1720.1, governs projects that involve the "Diversion of Water Courses."  Even though Applicants' culvert project proposed to divert the flow of surface water, the Zoning Administrator did not require them to apply under § 1720.1 and did not review the proposal under § 1720.1.  Applicants only submitted a § 1720.2 application and the Zoning Administrator only applied § 1720.2, stating that the culvert project was "associated with the on-going construction of a

---

[4]   The parties have provided only a five-page excerpt of the Bylaws, containing its title page, the table of contents, and pages 93 through 95, which contain the full text of § 1720.

3

pond/berm on Applicants' property."

Appellant appealed the Zoning Administrator's issuance of the Culvert Permit to the DRB. On March 4, 2009, the DRB upheld the Zoning Administrator's decision granting the Culvert Permit to Applicants.[5] On April 1, 2009, Appellant appealed the DRB decision to this Court; as of that date, Applicants had completed the culvert project in accordance with the Culvert Permit as issued by the Zoning Administrator.

Question 6

Question 6 of the Statement of Questions asks whether the Culvert Permit application should be "approved by this Court when much of the work for which the [Culvert Permit] was sought had already been completed prior to the time of the application in violation of the [Bylaws]." Applicants have moved for summary judgment or to dismiss Question 6.

Although commencement of construction in advance of obtaining a required zoning permit may be grounds for a municipality to issue a notice of violation and to bring an enforcement action under 24 V.S.A. §§ 4451 and 1452, no appeal has been filed with the Court relating either to a notice of violation or to the Zoning Administrator's denial of a request to take enforcement action. See Application of Carrier, 155 Vt. 152, 161 (1990) (In an appeal of a permit approval, "the failure of the [applicants] to obtain the proper permits in a timely manner is not before [the Court]."); In re Keenan Conditional Use Approval, No. 266-12-07 Vtec, slip op. at 3 (Vt. Envtl. Ct. June 4, 2009) (Durkin, J.) (The Court can "only address . . . enforcement actions after such proceedings go through the proper municipal processes and are brought before this Court in a timely appeal." (citing In re Maple Tree Place, 156 Vt. 484, 500 (1991))). In addition, Appellant has not provided any section of the Bylaws suggesting that the

---

[5] The parties have not provided a copy of the March 4, 2009 DRB decision.

4

Zoning Administrator, and hence this Court in this de novo appeal, must deny or decline to rule on an application for an as-built zoning permit.

Accordingly, because the issue of whether the work was completed in advance of the issuance of the permit is irrelevant to whether the Culvert Permit application should be granted or denied by this Court in this de novo appeal, Question 6 must be dismissed as beyond the scope of the present appeal.

Question 5

Question 5 of the Statement of Questions asks, "[w]hen a culvert and water diversion are proposed as part of a proposed earthwork, excavation and fill permit," whether the provisions of both §§ 1720.1 and 1720.2 are applicable.[6] Applicants only submitted an application for a excavation and fill permit under § 1720.2, and the Zoning Administrator only reviewed the Culvert Permit application under § 1720.2. Appellant argues that the application should instead be reviewed only under § 1720.1.

As this is a de novo appeal, the Court must independently determine which section or sections of the Bylaws are applicable to the culvert project at issue in this appeal. It appears from the application that the culvert or pipe is proposed to be "buried within [the] berm." However, material facts are in dispute, or at least have not been provided to the Court, as to whether the project involves any additional extraction of earth materials for use off the site, or any additional fill, beyond that which had already been approved in the Berm Permit. To the extent that it does propose such

---

[6] As written, Question 5 is posed as an impermissibly advisory hypothetical question: that is, whether both bylaw sections should be applied to any project proposing a culvert and water diversion in connection with an earthwork project. See In re 232511 Investments, Ltd., 2006 VT 27, ¶ 19, 179 Vt. 409 (stating that "any conclusion [the] court might reach" regarding a "hypothetical" question presented to it "would be advisory" (citing In re Bennington Sch., Inc., 2004 VT 6, ¶¶ 18-19, 176 Vt. 584 (mem.)). For the purposes of the present motions, the Court will treat Question 5 as asking whether both §§ 1720.1 and 1720.2 are applicable to the culvert project at issue in this appeal.

activity, § 1720.2 is applicable. To the extent that it does not, § 1720.2 is not applicable to the culvert project.

Similarly, material facts are in dispute, or at least have not been provided to the Court, as to whether the proposed culvert diverted, redirected, or relocated any natural drainage or water runoff pattern, as those terms are used under § 1720.1.[7] To the extent that the proposed culvert had such an effect on a natural drainage or water runoff pattern, § 1720.1 is also applicable. However, the application merely describes the culvert installation as being proposed to "reestablish" the "flow from pond." To the extent that the culvert installation restored the previously existing natural drainage or water runoff pattern, § 1720.1 may not be applicable.

Under the present state of the undisputed facts, an evidentiary hearing is necessary to resolve Question 5, and therefore summary judgment must be denied.[8]

---

[7] Even if the Applicants' four requests to admit, discussed further below, are considered to be admitted, they only deal with the effect of the culvert project on drainage patterns on Appellant's property; they do not resolve whether the culvert had any effect on the natural drainage pattern on Applicants' own property. Therefore, regardless of whether the admissions are or are not withdrawn, those admissions cannot by themselves resolve the issue of whether § 1720.1 applies to the project, as § 1720.1 could apply to a diversion located entirely on Applicants' own property.

[8] The parties should note that, if § 1720.2 is applicable to the culvert project, the Court has authority to proceed with the appeal on its merits, as that is the type of permit for which Applicants applied and which the DRB had before it. On the other hand, if §1720.1 is applicable to the culvert project, then it will be for the Zoning Administrator in the first instance, and then the DRB, to review an application for a special zoning permit under that section, as Applicants have not applied for a § 1720.1 permit and neither the Zoning Administrator nor the DRB considered the application under that provision. See In re King Garage Construction Permit, No. 202-9-08 Vtec, slip op. at 9–10 (Vt. Envtl. Ct. July 9, 2009) (Durkin, J.) (stating that the Court's "jurisdiction is limited to the application put forth for approval [below]" (citing In re Maple Tree Place, 156 Vt. 494, 499–500 (1991); In re Torres, 154 Vt. 233, 235)); id. at 11 (The court does "not have the authority to consider a land use application that ha[s] not been first noticed and heard before the municipal panel below." (citing Torres, 154 Vt. at 235–36)).

<u>Questions 1 and 4</u>

Question 1 of the Statement of Questions asks whether the proposed culvert project is "permissible and appropriate under §§ 1720.1 and 1720.2" of the Bylaws. Question 4 asks whether the application properly "address[es] and fulfill[s] the criteria" of §§ 1720.1 and 1720.2 of the Bylaws. Applicants ask this Court to dismiss Questions 1 and 4 of the Statement of Questions under V.R.C.P. 12(b)(6), arguing that they are too vague to state a claim for which relief may be granted.

As discussed in footnote 8, above, if § 1720.1 is applicable to the culvert project, this matter may have to be remanded to the Zoning Administrator to consider an application under that section in the first instance.

With regard to § 1720.2, if it is applicable to the culvert project, the question of whether the culvert project meets the "criteria" of § 1720.2, and therefore whether a "special zoning permit" should be issued for the culvert project in this <u>de novo</u> proceeding, is the issue on which Applicants have the burden of proof at trial.[9] Questions 1 and 4 are therefore not too vague to state a claim for which relief may be granted, and the motion to dismiss them must be denied. However, they will be treated as presenting a single issue for the Court: whether Applicants' culvert project meets the applicable provisions of § 1720.2 of the Bylaws.

---

[9] Both parties refer to the subsections of §§ 1720.1 and 1720.2 as containing "criteria" or standards for the zoning administrator to apply in issuing the "special zoning permit" authorized by each respective section. The parties have not raised, and the Court does not address, the scope of a zoning administrator's statutory authority to make the decisions or to impose the conditions authorized by §§ 1720.1 and 1720.2. See 24 V.S.A. § 4448(a) ("The administrative officer shall administer the bylaws literally and shall not have the power to permit any land development that is not in conformance with those bylaws.").

<u>Questions 2, 3, and 8</u>

Questions 2, 3, and 8 of the Statement of Questions each ask whether the culvert project will violate §§ 1720.1 and 1720.2 of the Bylaws by causing changes to the drainage patterns on Appellant's property. Specifically, Question 2 asks whether the culvert project will "impermissibly increase and modify the amount of water draining on to Appellant's property" in violation of those Bylaw sections. Question 3 asks whether "Applicants' proposed earthwork, berm, and culvert impermissibly alter, change, modify and interfere with the natural drainage patterns of the Applicants' and Appellant's respective properties" in violation of those Bylaw sections. Question 8 asks whether the culvert project will "create a nuisance under [§§ 1720.1 and 1720.2] in that water from the culvert, as well as the water diverted because of the berm . . . and other construction on Applicants' property[,] is flowing and will flow on to Appellant's property and cause a nuisance or harm to Appellant's property" in violation of those Bylaw sections. Applicants have moved for summary judgment on Questions 2, 3, and 8, and have also moved to dismiss Questions 3 and 8 to the extent that they relate to the berm project.

First, it is again important to emphasize that the only proposal within the scope of the present appeal is the project proposed in Applicants' culvert project application. The project authorized under the Berm Permit, which was not appealed and became final, is not at issue and cannot be indirectly challenged in this appeal. 24 V.S.A. § 4472(d). Therefore, Question 3 as it relates to the "berm" or any "earthwork" that was authorized under the Berm Permit, and Question 8 as it relates to "water diverted because of the berm" or because of any "other construction" not proposed in the culvert project application, must be dismissed as those issues are beyond the scope of the current appeal. See, e.g., <u>Appeal of Yates</u>, No. 158-9-04 Vtec, slip op. at 6–9 (Vt. Envtl. Ct. Apr. 17, 2007) (Durkin, J.) (dismissing several issues "on the basis that they [were] impermissible collateral attacks on previous DRB approvals and [were] therefore

8

outside the scope of [the] appeal").

Question 2 and the remainder of Questions 3 and 8 ask the Court to determine whether the proposed culvert project creates an "impermissible" increase in or modification of the drainage pattern, or creates a nuisance on or harm to Appellant's property, that is "in violation of" §§ 1720.1 and 1720.2 of the Bylaws.

In interpreting and applying administrative rules or regulations, such as the subsections of §§ 1720.1 and 1720.2, the Court approaches regulatory construction in the same manner as statutory interpretation. In re Williston Inn Group, 2008 VT 47, ¶ 14, 183 Vt. 621 (citing Conservation Law Found. v. Burke, 162 Vt. 115, 121 (1993)). As with a statute, the Court "will enforce the plain meaning of the [regulatory] language," because the Court presumes that the municipality "intended the plain, ordinary meaning of the [regulatory] language." In re Albert, 2008 VT 30, ¶ 10, 183 Vt. 637 (internal citations omitted). See also Williston Inn Group, 2008 VT 30, ¶ 10 (The Court's "overall goal is to discern the intent of the drafters," first and foremost "by reference to the plain meaning of the regulatory language." (citing Slocum v. Dep't of Soc. Welfare, 154 Vt. 474, 478 (1990))).

Turning to the regulatory provisions at issue, § 1720.1 requires submission of specific information related to the existence of and quantity of any increases in runoff. See Bylaws §§ 1720.1(3), (4). Nothing in § 1720.1 authorizes the Zoning Administrator to impose conditions, and nothing in § 1720.1 establishes any criteria whose failure to be met could be construed as a "violation" of § 1720.1. The only requirement of § 1720.1 is that a special zoning permit be obtained for any "diversion, redirection or relocation of any natural water course, drainage or water runoff pattern." By its terms, the only potential "violation" of § 1720.1 is the failure to obtain a special zoning permit for those activities, or the failure to provide the required information with the application. In any event, if § 1720.1 is applicable, the Court will consider remanding the culvert permit application for consideration in the first instance by the Zoning Administrator. See

9

footnote 8, above.

On the other hand, § 1720.2 allows the Zoning Administrator, and hence this Court in a de novo appeal, to impose conditions relating to the "creation of a nuisance," § 1720.2(A)(5), resulting from a project involving extraction, filling or removal of materials such as earth, gravel or stone. Nevertheless, other than the prohibition regarding flood plain activity discussed in relation to Question 9, below, nothing in § 1720.2 establishes any criteria whose failure to be met could be construed as a "violation" of § 1720.2.

Therefore, those portions of Question 2, and those portions of the remainder of Questions 3 and 8, that ask whether various effects of the culvert project are "in violation of" §§ 1720.1 and 1720.2 of the Bylaws are dismissed.

The remainder of Questions 2, 3, and 8 relate to the other questions presented in this appeal. The remainder of Questions 2 and 3, asking whether the culvert project will "increase and modify the amount of water draining on to Appellant's property" or whether the culvert project will "alter, change, modify and interfere with the natural drainage patterns of Applicants' and Appellant's respective properties," relate to the Court's task under Question 5 in determining whether § 1720.1 applies to the culvert project. If § 1720.2 applies to the culvert project, the remainder of Question 8, asking whether the project creates a nuisance, relates to the Court's task under Questions 1 and 4 in determining whether any conditions should be imposed. The remainder of Questions 2, 3, and 8 therefore are not dismissed at this time; however, Appellant will be required to restate them to clarify what remains in this appeal

Question 7

Question 7 of the Statement of Questions asks whether the culvert project will "have an adverse effect on public health, safety, and welfare under [§§ 1720.1 and 1720.2]." Applicants have moved for summary judgment on Question 7.

10

First, the only subsection of § 1720 addressing a proposed project's effect on public health, safety, or welfare is found in § 1720.2(A)(4); therefore, Question 7 must be restricted to § 1720.2. The reference in Question 7 to § 1720.1 must therefore be dismissed.

Under § 1720.2(A)(4), the Zoning Administrator is authorized to impose conditions on a special zoning permit "relating to," among other factors, the proposal's "[e]ffect on public health and safety and welfare." If the culvert project requires a permit under § 1720.2, the Court will consider whether to impose conditions on the project under § 1720.2(A)(4) in the course of ruling on the permit application in this <u>de novo</u> appeal.

Because material facts are in dispute, or at least have not been provided to the Court, as to whether the culvert project requires a permit under § 1720.2, as well as to whether the culvert project will have an effect on public health, safety, and welfare, and if so, what conditions are necessary in light of that finding, Question 7 of the Statement of Question remains for the merits of this appeal. Summary judgment as to Question 7 is therefore denied.

Question 9

Question 9 of the Statement of Questions asks whether the culvert project will "interfere with or reduce the flood stage capacity of Applicants' and Appellants' property in violation of the above[-]cited . . . Bylaws." Applicants have moved for summary judgment on Question 9.

First, the only regulation addressing "flood stage capacity" is found in § 1720.2(B)(5); therefore, Question 9 must be restricted to § 1720.2. The reference in Question 9 to § 1720.1 must therefore be dismissed.

Section 1720.2(B)(5) "prohibit[s]" the excavation of earth materials within the 100-year flood plain of the LaPlatte River "where the activity proposed will lower the

11

level of the water table, interfere with the natural flow patterns[,] or reduce the flood stage capacity." Bylaws § 1720.2(B)(5).

Material facts are in dispute, or at least have not been provided to the Court, regarding whether the culvert project involves any excavation of earth materials at all, beyond any excavation involved in the berm project covered by the final Berm Permit. If the culvert project does involve any excavation, material facts are in dispute, or at least have not been provided to the Court, regarding whether such excavation will occur within the 100-year flood plain of the LaPlatte River. Further, if the culvert project does involves excavation within the 100-year flood plain, material facts are in dispute, or at least have not been provided to the Court, as to whether such excavation with reduce the flood stage capacity of the flood plain area.

Because material facts are in dispute, or at least have not been provided to the Court, summary judgment on Question 9 must be denied on the present record. However, at the scheduled telephone conference (see enclosed notice), please be prepared to discuss whether material facts are actually disputed as to Question 9, or whether any party wishes to present any supplemental affidavits or motions for partial summary judgment prior to trial.

<u>Applicants' Requests to Admit and Appellant's Motion to Deem Answer Timely</u>

On November 30, 2009, Applicants served on Appellant a Request for Admission under V.R.C.P. 36. See V.R.C.P. 36 (permitting a party to serve upon any other party a request for the admission of fact, and establishing that "[t]he matter is admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter"). The request sought admission by Appellant that each of the following facts is true:

1.  Water from the culvert that is the subject of the permit appealed exits onto the Appellees' property, flows on Appellees' property into a pond on the Appellees' property, flows from that pond through a swale on Appellees' property and then discharges into the LaPlatte River at a point on Appellees' property (the "Drainage System").

2.  Water from the Drainage System does not flow onto Appellant's property.

3.  The natural drainage pattern of Appellant's property is not altered, changed, modified or interfered with by the Drainage System.

4.  The Drainage System does not increase or modify the amount of water draining on to Appellant's property.

From the date of service, Appellant had thirty days to timely answer or object to the request, which gave him until December 29, 2009. Id. Appellant did not file an answer to the requests to admit by that date; therefore, under V.R.C.P. 36, the statements in the Request for Admission were admitted as of December 29, 2009. Id.

Appellant did not file an answer to the requests to admit until February 12, 2010, in which he denied all of the statements in the Request for Admission. However, as Appellant's untimely answers did not withdraw or amend the admissions, on February 16, 2009, Appellant moved the Court to deem his answers timely, that is, to withdraw the admissions under V.R.C.P. 36. See V.R.C.P. 36(b) ("Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.").

In the motion to deem his answers timely, Appellant cites several reasons explaining why his answer to the requests to admit was not filed in a timely fashion, including the presence of the holiday season, and several complex and time-sensitive matters that demanded the attention of his attorneys. The Court makes no finding that this neglect was excusable; however, "excusable neglect is not a requirement for allowing withdrawal of admissions." Record v. Kempe, 2007 VT 39, ¶ 10, 182 Vt. 17

(allowing withdrawal of an implied admission created by failure to respond to request to admit).

Under V.R.C.P. 36(b), "a court has discretion to allow withdrawal of an admission if 'the presentation of the merits of the action will be subserved' by allowing withdrawal and the party who obtained the admission 'fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.'" Id. (quoting V.R.C.P. 36(b)).

All four of the requested admissions may be of great interest to any private property dispute between the parties, but they are primarily of importance in the present case to the extent that they may assist the Court in determining the jurisdictional fact of whether § 1720.1 applies to the culvert application. The presentation of the merits of the action as to that threshold jurisdictional fact will be served by allowing Appellant to withdraw the admissions and to present evidence as to whether the culvert itself causes a diversion, redirection, or relocation of a natural water course, drainage or water runoff pattern, without regard to any such diversions created by work done under the Berm Permit. To that extent only, the requested admissions are "key issues" that are better left to the merits of this case. See id. (upholding a withdrawal of an admission "because the facts that would be deemed admitted were 'both key issues,' such that 'denying Plaintiffs' motion [to withdraw the admissions] would essentially preclude a determination of the substantive merits of the case" (citations omitted)).

It is important to note that the requested admissions in the present appeal only relate to whether water from Applicants' property flows onto Appellant's property. The requested admissions do not resolve whether the culvert itself has caused a diversion, redirection, or relocation of a natural water course, drainage or water runoff pattern if it may have occurred solely on Applicants' own property, in which case § 1720.1 would be applicable even without any effect on Appellant's property.

14

However, if the culvert itself has not caused any diversion, redirection, or relocation of a natural water course, drainage or water runoff pattern, then a special zoning permit under § 1720.1 is not required. Because the admissions do not resolve the question of whether § 1720.1 is applicable, Applicants have not shown that withdrawal of the admissions "will prejudice [them] in maintaining the action or defense on the merits." Record v. Kempe, 2007 VT 39, ¶ 10.

Therefore, for the limited purpose for which the issues are relevant to this appeal, withdrawal of Appellant's admissions is appropriate under V.R.C.P. 36(b). Accordingly, Appellant's Motion to Deem Answers to Appellees' Requests for Admission as Timely Made, which the Court treats as a motion to withdraw the implied admissions and to replace them with the responses to the requests to admit filed on February 12, 2010, is GRANTED.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Applicants' Motion for Summary Judgment or to Dismiss is GRANTED in part and DENIED in part, as discussed above with respect to each question in the Statement of Questions. On or before March 15, 2010, Appellant shall file a revised Statement of Questions, keeping the original numbering, and conforming each remaining question or portion of a question to the rulings in this decision. Any objections to the wording of the revised Statement of Questions shall be filed on or before March 22, 2010, so that they may be discussed at the telephone conference scheduled for March 29, 2010. Appellant's Motion to Deem Answers to Appellees' Requests for Admission as Timely Made, treated as a motion to withdraw the implied admissions and to replace them with the responses to the requests to admit filed on February 12, 2010, is GRANTED.

The hearing on the merits of this appeal remains scheduled for May 4, 2010, to continue if necessary on May 5, 2010. However, at the telephone conference now

scheduled for March 29, 2010 (see enclosed notice), please be prepared to discuss whether the threshold facts of the scope of the culvert project can or should be resolved in advance of that hearing, as those facts determine whether § 1720.2 applies at all to the culvert. If § 1720.2 does not apply to the culvert, all that will remain for trial is whether § 1720.1 applies. If § 1720.1 does apply, the matter will have to be remanded for the Zoning Administrator in the first instance to determine whether a special zoning permit should issue for the culvert under § 1720.1. Similarly, if § 1720.1 does not apply, the matter will have to be remanded for the Zoning Administrator in the first instance to determine whether to act on the culvert application only under § 1710, which governs the issuance of zoning permits that do not require special zoning permits under either prong of § 1720.

Done at Berlin, Vermont, this 5th day of March, 2010.

_____
Merideth Wright
Environmental Judge