*Dondero v. Morrison*, 632-7-16 Cncv (Mello, J., Oct. 19, 2016).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                        **CIVIL DIVISION**
**Chittenden Unit**                                        **Docket No. 632-7-16 Cncv**


**Bryan Dondero,**
         **Defendant/Appellant**


         **v.**


**Sarah Morrison,**
         **Plaintiff/Appellee,**

## SMALL CLAIMS APPEAL DECISION

On July 1, 2016, Acting Small Claims Court Judge Eileen Blackwood issued a small claims judgment in the amount of $5,000 plus costs in favor of appellee Sarah Morrison, the plaintiff in the small claims court, based on the evidence presented at a contested hearing held that same day. Appellant Bryan Dondero, the defendant in small claims court, has appealed the small claims judgment to the Superior Court.

This appeal is limited to questions of law and must be based on the record from the Small Claims Court. (V.R.S.C.P. Rules 10(c) and (d)). Therefore, the small claims court's findings of fact may not be set aside unless they are "clearly erroneous," and "[d]ue regard" must be given to the trial judge's opportunity "to judge the credibility of the witnesses and the weight of the evidence" (V.R.C.P. Rule 52(a)(2)). This court must review the small claims court's findings of fact "in the light most favorable to the prevailing party below, disregarding the effect of modifying evidence." In re M.B., 2004 VT 58, ¶ 6, 177 Vt. 481 (mem.). Moreover, the small claims court's findings must stand "if there is any reasonable and credible evidence to support them." Id. Lastly, an appellate court "will not reverse a trial court's decision if the record below reveals any legal grounds that would justify the result." Larkin v. City of Burlington, 172 Vt. 566, 568 (2001).

The evidence, viewed in the light most favorable to appellee Morrison, establishes that in April of 2014 the parties entered into a "Lease Agreement With Option to Purchase," by which Ms. Morrison rented her house and premises at 27 Marsh Lane in Colchester, Vermont, to Mr. Dondero for a term of two years ending May 1, 2016, and granted him an option to purchase the property for $229,000 on or before May 1, 2016. Under the lease, Mr. Dondero was to pay rent to Ms. Morrison in the amount of $1,800 per month, with rent due the first of each month. The Lease provided, "If Tenant fails to perform or fulfill any obligation under this Lease, Tenant shall be in default of both the Lease and Option to Purchase." In addition, the lease stated: "In the event of any legal action by the parties arising out of this Lease, the losing party shall pay the prevailing party reasonable attorneys' fees, costs of litigation including but not limited to expert and other witness fees, and court costs in addition to all other relief."

In July 2015, Mr. Dondero informed Ms. Morrison that he would not be buying the house in May of 2016, and he asked her for an extension of the Lease. Ms. Morrison replied that she would be willing to discuss that with him but she would not be willing to extend the Lease without some

modifications. In their subsequent discussions the parties were unable to agree upon the terms of an extention.

On August 3, 2015, Mr. Dondero sent Ms. Morrison an email stating, "At this point, I think it would be best for me to exit our agreement and move out." In his email, Mr. Dondero explained that he had decided not to sit for a physical therapy board exam until July of 2016, and, therefore, he would not be able to obtain the financing he needed to purchase the property by the May 1st deadline specified in the Lease. Mr. Dondero added, "Since I can't purchase the house by May 1st and you are going to raise the rent/selling price, there is no incentive for me to continue to rent here…. So I would like to move out by Sept 1st…." Mr. Dondero's email ended with the following: "As always, I am more than willing and happy to sit down with you and work out a different plan if you like but I would need to do that sooner than later because I need to head to FL by 8/25 at the latest and would need ample time to move my things out if needed."

On August 5, 2015, Ms. Morrison's attorney, Edward M. Kenney, Esq., sent Mr. Dondero an email stating: "We acknowledge your intent to move out of the property as of September 1, 2015. In reliance thereon, please be advised that the locks will be changed on or about September 2, 2015. We would ask that your and your roommates' belongings be entirely removed by then."

That same day Mr. Dondero sent Attorney Kenney a reply saying "I would like to know what the termination of the lease agreement entails for me financially" and asking whether he would be required to compensate Ms. Morrison "for the remaining rent of the house from Sep until May 1st." Mr. Morrison added that, if Ms. Morrison intended to hold him responsible for rent through the May 1st termination date of the Lease, then he would plan to have his roommates sublet the property until May 1st.

The following day Attorney Kenney informed Mr. Dondero that he could not give him any legal advice and suggested that Mr. Dondero should probably retain an attorney of his own. Mr. Kenney added that Ms. Morrison would "comply with her duty to mitigate any losses from your decision to withdraw from your contract" but "[i]f she is not able to mitigate her losses, we would seek payment from you." Regarding Mr. Dondero's suggestion that he be allowed to sublease the property to his roommates through May 1st, Mr. Kenney stated that Ms. Morrison "does not agree that you can find your own sub-tenant without her consent and approval."

On August 6th Mr. Dondero sent an email to Attorney Kenney proposing a resolution of his dispute with Ms. Morrison and adding "I think that this would be fair compensation for me breaking the lease early." Later that day, upon learning that his proposed resolution was not acceptable to Mr. Morrison, Mr. Dondero sent Attorney Kenney an email stating: "Thank you for getting back to me. Given this new information, I will stick with the original agreement as planned and not move out Sept 1st. I think it would be easier for everyone than if I would move out."

On August 9, Mr. Dondero reiterated that he wished to terminate the lease by mutual agreement, and if that were not possible he "would like to stay on the lease as planned." On August 11, Mr. Dondero emailed that he would pay his September rent, which he subsequently did.

Mr. Dondero moved out on August 25, 2015, and relocated to Florida "for a clinical rotation that I was on" (hearing transcript, p. 11). Ms. Morrison was unsuccessful in finding a new tenant

for the property, and in January of 2016 she sold the property for less than the option price that Mr. Dondero had agreed to in the Lease.

Subsequently, Ms. Morrision brought suit in Small Claims Court, alleging that Mr. Dondero had breached the lease and seeking damages for the rent Mr. Dondero failed to pay from October 2015 through January 2016. Mr. Dondero counterclaimed for the rent he paid for September 2015.

On July 1, 2016, the Small Claims Court held a merits hearing and took evidence from Mr. Dondero and Ms. Morrison. At the conclusion of the hearing (transcript, pp. 20-22) the Small Claims Judge found on the record that Mr. Dondero had signed a lease agreeing to rent Ms. Morrison's property until May of 2016. The judge further found that "Mr. Dondero terminated that lease, that he indicated that he did not want to go forward because Ms. Morrison did not immediately agree to his plan to extend the lease until he could complete the financing." Based on these findings, the judge concluded, "Because he terminated the lease … he remains responsible for the rent." After finding that Ms. Morrison had made reasonable efforts to mitigate her damages, the judge held that Ms. Morrison was entitled to recover from Mr. Dondero for the four months October 2015 through January 2016, and that Mr. Dondero was not entitled to recover the September rent.[1] Mr. Dondero then appealed the decision to this court.

In his appeal Dondero contends that the Small Claims Court erred in finding that he terminated the lease. In support of his contention Mr. Dondero argues that the Small Claims Court "erred in overlooking the clear evidence that Mr. Dondero did not repudiate the lease, and that he withdrew any repudiation that did occur." Because he did not terminate the lease, Mr. Dondero contends that the small claims judge's judgment in favor of Ms. Morrison must be reversed and that judgment must be entered in his favor for the September rent that he paid and for the attorneys' fees he has incurred in this appeal.

"When one party repudiates a contract, the other party is discharged from her duties under the contract and may bring an action for breach." Record v. Kempe, 2007 VT 39, paragraph 15, 182 Vt. 17 (citing Lowe v. Beaty, 145 Vt. 215, 218 (1984) ("A repudiation before the time for performance constitutes an anticipatory breach of the agreement.")). Moreover, "[a] party repudiates a contract when that party explicitly or implicitly represents that he cannot or will not perform his obligations under the contract." Record, supra. However, "[t]o constitute a repudiation, the defendant's statements must indicate a 'positive and unequivocal refusal to perform' under the contract." Lowe, supra, 145 Vt. At 218.

Mr. Dondero first contends that his email of August 3, 2015, stating that he intended to "exit our agreement and move out," did not constitute a "positive and unequivocal refusal to perform" under the Lease, because his email also said that he remained "more than willing and happy to sit down with you and work out a different plan if you like." This contention is without merit. Mr. Dondero's statement, "I think it would be best for me to exit our agreement and move out," constituted a positive and unequivocal refusal to honor the Lease, which required him to continue renting Ms. Morrison's property for another five months. Although he indicated a willingness to

---

[1] Because the small claims court's maximum jurisdictional amount is $5,000, the small claims judge entered judgment in favor of Ms. Morrison for $5,000, despite the fact that her proven damages exceeded that amount.

3

discuss possible alternatives, his email made it clear that those alternatives would have to involve terms different from those set forth in the Lease. For example, he said "I need to head to FL by 8/25 and would need ample time to move my things out if needed." He also said, "[s]ince I can't purchase the house by May 1st and you are going to raise the rent/selling price, there is no incentive for me to continue to rent here...."

Second, Mr. Dondero argues that, if he did repudiate the Lease in his email of August 4, 2015, he withdrew the repudiation on August 6th when he sent Attorney Kenney his email saying "[g]iven this new information, I will stick with the original agreement as planned and not move out Sept 1st." In addition, Mr. Dondero notes that he paid the rent for September, which he claims confirmed his promise to "stick with the original agreement," notwithstanding his earlier repudiation.

"As a general rule, a repudiation can be withdrawn provided such withdrawal occurs before the injured party materially changes his position in reliance on the repudiation." Lowe, supra, 145 Vt. At 218. Mr. Dondero argues that there is no evidence in the record that Ms. Morrison materially changed her position in reliance on his email of August 4th. Moreover, Mr. Dondero contends that because he paid the rent for September Ms. Morrison could not possibly claim to have been prejudiced by his email of August 4th. Therefore, he contends that the small claims judge erred in concluding that he breached the Lease.

The court agrees that there does not appear to be any evidence in the record that Ms. Morrison materially changed her position between August 4th, when Mr. Dondero repudiated the Lease, and August 6th, when he purportedly withdrew his repudiation. However, it is undisputed that Mr. Dondero moved out of Ms. Morrison's house in Colchester on August 25, 2015, and relocated to Florida "for a clinical rotation that [he] was on." Mr. Dondero's act of moving out five months before the Lease was to expire, without providing any assurance that he would be returning before the end of September, the last month for which he had paid rent, and that he would be paying the rent for the remainder of the Lease term, constituted an actual breach of the Lease and amounted to a retraction of his withdrawal of his earlier repudiation.

For all the foregoing reasons, the judgment of the Small Claims Court is affirmed.

So ORDERED this 19th day of October, 2016.

_____
Robert A. Mello, Superior Judge

4